**David R. YADLOSKY, individually and on behalf of all persons similarly situated, Plaintiff,**

v.

**GRANT THORNTON L.L.P., et al., Defendants.**

**No. 99–CV–76337.**

United States District Court, E.D. Michigan, Southern Division.

March 21, 2000.

---

Michael P. Marsalese, Bloomfield Hills, for plaintiff.

Thomas F. Cavalier, John A. Libby, Sharon M. Woods, Barris, Sott, Detroit, Larry K. Elliott, Cohen & Grisgsby, Pittsburgh, PA, Rodger D. Young, Steven C. Susser, Young Assoc., Joseph H. Spiegel, Southfield, Dennis K. Egan, Egan & Mazarra, Troy, William K. Holmes, Melvin G. Moseley, Jr., Brian J. Masternak, Warner, Norcross, Grand Rapids, David S. Snyder, Sullivan, Ward, Southfield, Gary M. Saretsky, Hertz, Schram, Bloomfield Hills, Peter J. Anderson, Pending App., Kristen Jones Indermark, Not Admitted, Sutherland, Asbill, Atlanta, GA, Steven M. Wolock, Maddin, Weiner, Southfield, Harvey R. Heller, Marjorie S. Hensel, Maddin, Hauser, Southfield, Gerald W. Van Wyke, Feikens, Stevens, Michael P. Coakley, Thomas R. Cox, Miller, Canfield, Detroit, William H. Horton, Linda M. Watson, Michael R. Turco, Cox, Hodgman, Troy, Joanne F. Ross, Urso Assoc., Detroit, Stephen M. Gross, Lindahl, Gross, Bingham Farms, for Grant Thornton, LLP, Doeren Mayhew and Company, PC, Sigma Financial Corporation, Vestax Securities Corporation, Gregory J. Schwartz and Company, Incorporated, Equitas America, L.L.C., Apex Capital, L.L.C., Proquities, Incorporated, Centennial Capital Management, East–West Capital Corporation, Seger Financial, Incorporated, Mariner Financial Services, Incorporated, Mutibank Securities, Incorporated, Patrick D. Quinlan, Thomas P. Cronin, Lee P. Wells, James B. Quinlan, D. Michael Jehle, John P. O'Leary, Keith D. Pietila, Alexander J. Ajemian, Cheryl Swain, defendants.

Patrick E. Cafferty, Miller, Faucher, Ann Arbor, MI, Jerome G. Quinn, Bloomfield Hills, MI, Anthony V. Trogan, Jr., Weisman, Trogan, Bingham Farms, MI, for movants.

*OPINION AND ORDER DENYING MOTION FOR CLASS CERTIFICATION*

STEEH, District Judge.

Plaintiff David Yadlosky moves for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). For the reasons set forth below, plaintiff's motion will be DENIED.

## BACKGROUND

Plaintiff David Yadlosky filed a thirteen count second amended complaint on January 3, 2000 alleging he spent $522,822.00 for various MCA Financial Corporation ("MCA") securities during a period from May 10, 1993 through September 12, 1997. The securities included series "A" and series "B" preferred stock, shares in limited partnerships, 11% corporate bonds, and "pass-through-pools" ("pool certificates"). The defendants are two certified public accounting firms that performed financial audits for MCA, ten securities brokers/dealers that sold MCA securities to investors, and individual officers and directors of MCA. Plaintiff Yadlosky alleges the defendants misrepresented MCA's financial condition and the value of MCA securities, thereby inducing investors to purchase MCA securities. Specifically, plaintiff alleges: violations of the Securities and Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, as promulgated thereunder, and § 20(a) of the Act, 15 U.S.C. § 78t(a) (Counts I and II), breach of fiduciary duty and co-conspiracy (Count III), common law fraud (Count IV), negligent misrepresentation (Count V), suppression of truth (Count VI), deceit (Count VII), negligent and wanton supervision (Count VIII), negligent supervision (Count IX), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count X), state securities fraud in violation of M.C.L. § 451.501 and M.C.L. § 451.810 (Counts XI–XII), and third-party beneficiary liability for breach of contract in avoidance of Michigan's Accountant Liability Act, M.C.L. § 600.2961. MCA is now in bankruptcy, and is not a party to this lawsuit. By Order of February 16, 1999, and pursuant to the Public Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, plaintiff Yadlosky was appointed lead plaintiff, and the Law Offices of Michael P. Marsalese, Esq. were appointed lead counsel.

## MOTION FOR CLASS CERTIFICATION

■■■ Plaintiff moves under Federal Rules of Civil Procedure 23(a) and 23(b)(3) to certify this lawsuit as a class action with a proposed class of 2811 investors that purchased MCA securities from January 1, 1986 through January 28, 1999. Rules 23(a) and 23(b)(3) provide:

**Rule 23. Class Actions**

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(a), 23(b)(3). A district court enjoys broad discretion in certifying class actions, but must exercise this discretion within the framework of Rule 23. When evaluating whether to certify the class, the district court must take the allegations of plaintiffs as true, with any doubts resolved in favor of certification. *See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Co.,* 29 F.Supp.2d 825, 830 (N.D.Ohio 1998) (citing *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977)). The

court must perform a "rigorous analysis". *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). The plaintiff has the burden of showing that all of the requirements for class certification have been met. *See Ballan v. Upjohn Co.*, 159 F.R.D. 473, 478 (W.D.Mich.1994).

## I. Predominance of Individual Issues—Rule 23(b)(3)

### A. Reliance

The defendants' primary argument against class certification is that, to recover on the federal securities fraud claims, plaintiff Yadlosky will be required to prove each of the proposed 2811 class members' individual reliance in separate "mini-trials" because plaintiff is not entitled to a presumption of reliance applicable in "fraud-on-the market" cases. Defendants maintain these individual reliance issues will predominate over issues of fact and law common to the class, making class action certification inappropriate.

■ In *Basic Incorporated v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), the Supreme Court recognized that reliance is an element of a § 10(b) and Rule 10b–5 securities fraud claim, providing "the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Id.* at 243, 108 S.Ct. 978. The Court continued:

> In face-to-face transactions, the inquiry into an investor's reliance upon information is into the subjective pricing of that information by that investor. With the presence of a market, the market is interposed between seller and buyer and, ideally, transmits information to the investor in the processed form of a market price. Thus the market is performing a substantial part of the valuation process performed by the investor in a face-to-face transaction. The market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price.

*Id.* at 244, 108 S.Ct. 978 (internal citation omitted). Thus, "where materially misleading statements have been disseminated into an impersonal, well-developed market for se-

curities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id.* at 247, 108 S.Ct. 978. Without the benefit of a presumption of reliance, however, "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively *would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones.*" *Id.* at 242, 108 S.Ct. 978 (emphasis added).

■ In *Freeman v. Laventhol & Horwath*, 915 F.2d 193 (6th Cir.1990), the Sixth Circuit recognized that, for a presumption of reliance to apply in favor of all investors, the subject securities must have been traded in an open and efficient market:

> The fraud on the market theory cannot be applied logically to securities that are not traded in efficient markets. An inefficient market, by definition, does not incorporate into its price all the information about the security..... Investors, therefore, cannot be presumed to rely reasonably on the integrity of the market of a security that is traded in such a market.

*Id.* at 198. "[T]he presumption of reliance ... arises only when there has been a fraud on an efficient market." *Id.* at 198. *Freeman* involved the sale of tax-exempt municipal bonds that were not sold in an open and efficient market. *Id.* at 199. The *Freeman* court ruled that, absent an efficient market for the bonds, the defendant sellers, broker-dealers, and accountants were entitled to summary judgment of the plaintiffs' claims for a presumption of reliance. *Id.* at 199.

In *O'Neil v. Appel*, 165 F.R.D. 479 (W.D.Mich.1996), class certification was denied as to the plaintiff stockholders' § 10(b), Rule 10b–5, and § 20(a) claims, common law fraud claims, and common law civil conspiracy claims: "[C]ommon questions do not predominate because individual proof of reliance, causation, and damages will be necessary; it is unlikely that plaintiffs will have the benefit of the fraud-on-the-market theory". *Id.* at 483. The *O'Neil* court reached this conclusion despite the fact that the stocks in question had been sold on the NASDAQ system, reasoning that the inquiry is on the market for the stock, not the location where the

stock trades. *Id.* at 504. The *O'Neil* court found that the price of "common stock purchase warrants" were not established by an efficient market, but by the company that sold the stock, the offeror. *Id.* at 486, 505. Further, the stock warrants were offered only to individuals that met minimum financial requirements, with written purchaser disclaimers acknowledging there was "no market" for the warrants. *Id.* at 486–488. The *O'Neil* court rejected the argument that determining whether the fraud-on the-market theory applied required the district court to impermissibly decide the merits of the case. *Id.* at 496, 497 (citing *Thompson v. County of Medina*, 29 F.3d 238, 240–41 (6th Cir.1994)).

> If the presumption [of reliance] applies [under a fraud-on-the-market theory], a class action is much easier to maintain because individual proof of reliance is not necessary. In the absence of such a presumption, individual issues are more likely to predominate.

*Id.* at 498.

> Where numerous mini-trials are necessary to resolve individual questions of reliance and causation, the benefits of a class action disappear. If, therefore, a fraud-on-the-market theory is not reasonably available to plaintiffs and individual proofs on these theories is necessary, common questions will not predominate.

*Id.* at 499. The *O'Neil* court reasoned that the plaintiff's Michigan state law claims of fraud and conspiracy likewise required individual proof of reliance, and were therefore not amenable to class action status, considering that Michigan has not adopted a fraud-on-the-market theory, and that conspiracy requires proof of an underlying wrongful act, to wit, fraud. *Id.* at 505. *See also Van Vels v. Premier Athletic Center of Plainfield*, 182 F.R.D. 500, 509 (W.D.Mich.1998).

At the March 6, 2000 hearing on the motion for class certification, plaintiff Yadlosky admitted that the MCA securities at issue were not sold in an open and efficient market. Consistent with that admission, nothing in the record indicates, for example, that the MCA securities traded in large weekly volumes, that a significant number of reports about MCA securities were generated by security analysts, that market makers and arbitrageurs exist in MCA securities, that MCA was eligible to file abbreviated S–3 registration statements with the SEC, or that there exists a history of immediate movement in MCA securities prices caused by unexpected corporate events or financial releases. *See Freeman*, 915 F.2d at 199 (identifying five factors useful in determining whether a security was traded in an open and efficient market). Clearly, MCA securities were not traded in an open and efficient market.

■ Plaintiff Yadlosky nonetheless argues he is entitled to a presumption of reliance applicable to all 2811 proposed class members consistent with the reasoning in *Basic Inc.* and *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975), and his allegations of a general scheme to defraud accomplished, in part, by the dissemination of the same written offering materials to "virtually all" class members. *Basic, Inc.*, however, involved securities traded in an open and efficient market, thus supporting a presumption of reliance. *See Basic, Inc.*, 485 U.S. at 248 n. 27, 250, 108 S.Ct. 978. *Blackie* likewise recognized that "proof of subjective reliance on particular misrepresentations is unnecessary to establish a 10b–5 claim for a deception inflating the price of a stock *traded in the open market.*" *Blackie*, 524 F.2d at 906 (emphasis added). To the extent *Blackie* held that reliance is not an element of a 10b–5 claim, *id.* at 905, the holding is in direct conflict with the Supreme Court's later contrary pronouncement. *See Basic, Inc.*, 485 U.S. at 243, 108 S.Ct. 978 (stating "reliance is an element of a Rule 10b–5 cause of action"). The court notes that the pool certificate offering materials proffered by Yadlosky expressly provide that "The price of the Certificates, and the percentage interest in the Pool represented by each Certificate, are determined by MCA in the exercise of its discretion". *See O'Neil*, 165 F.R.D. at 486, 505 (finding price was set by offeror as opposed to open market).

■ Plaintiff appears to confuse the class certification requirement of predominance of class issues under Rule 23(b)(3) with the

commonality requirement of Rule 23(a)(2). Commonality under Rule 23(a)(2) is met where, notwithstanding some factual differences, the class action claims are based on a "common course of conduct" of misrepresentations, omissions, or other wrongdoing affecting all class members in the same manner. *See In re Computer Memories Securities Litigation,* 111 F.R.D. 675, 684 (N.D.Cal.1986). Plaintiff's asserted common issues of fact and law are:(1) whether the defendants violated securities laws; (2) whether the defendants were engaged in a "scheme to defraud"; (3) whether the defendants possessed the requisite scienter; (4) whether the defendants breached fiduciary duties and/or contracts, and; (5) whether the MCA investors sustained damages. Indeed, to satisfy the commonality requirement of Rule 23(a)(2), "there need be only one question common to the class." *Sprague,* 133 F.3d at 397.

Rule 23(b)(3), however, raises different issues than Rule 23(a)(2), that is, whether "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and [whether] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. Rule Civ. P. 23(b)(3) (emphasis added). *Blackie,* relied upon by plaintiff, recognized that, although an alleged "common course of conduct" might satisfy the commonality requirement of Rule 23(a)(2), Rule 23(b)(3) raised different concerns:

> [E]ven when unrelated misrepresentations are alleged as part of a common scheme, class members may share common factual questions, and trial in the same forum avoids duplicative proof. This is a major purpose of a class action; the "common question" requirement should be interpreted to obtain that objective. Naturally, when the component misrepresentations "of a course of conduct" fraud are unrelated, a great many more non-common questions exist. In that situation no representative's claim may be typical of the rest of the class, Rule 23(a)(3), although that depends on how broadly that requirement is construed. *We think it is for the predominance and other requirements of Rule*

> *23(b)(3), rather than the common question requirement, to function to keep the balance between the economies attained and lost by allowing a class action.*

*Blackie,* 524 F.2d at 903 n. 19 (internal citations omitted, emphasis added).

This distinction between Rule 23(a)(2) and 23(b)(3) was recognized in *O'Neil* under circumstances similar to those now before this court. The *O'Neil* court ruled that the issues identified by the *O'Neil* plaintiffs in their securities fraud case—whether all defendants violated securities laws; whether there were material misrepresentations of fact; whether all defendants participated in a common course of conduct; whether all defendants acted willfully or recklessly, and; whether the market price of common stock was artificially inflated—clearly satisfied the commonality requirement of Rule 23(a)(2). *See O'Neil,* 165 F.R.D. at 491. The *O'Neil* court went on to decline class certification with respect to securities fraud claims filed under § 10(b), Rule 10b–5, and § 20(a), as well as state claims of fraud and common law conspiracy, finding there was a "strong possibility" that the individual reliance issues arising from these claims would predominate over the issues common to the class; the *O'Neil* stocks, as here, had been sold in an inefficient market. *Id.* at 505–506. As to the Rule 23(b)(3) consideration of whether a class action would be superior to separate actions:

> [C]ourts do not certify classes in every securities case, as a class action is not invariably a superior method of proceeding. This is one such instance. Where individual hearings are required on questions of reliance, causation, and damages, the case is "hardly the picture of judicial economy envisioned by Rule 23." *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 681 (N.D.Ohio 1995).

*Id.* at 507.

Plaintiff Yadlosky admits, and the record demonstrates, that the MCA securities at issue here were not sold in an open and efficient market. Pursuant to *Freeman,* the proposed class of 2811 investors is not entitled to a presumption of reliance. *Freeman,* 915 F.2d at 198. Consistent with *Basic, Inc.,*

*Freeman,* and *O'Neil,* individual proof of reliance by each of the 2811 investors as to their § 10(b), Rule 10b–5, and § 20(a) claims, as well individual proof of reliance as to the claims of co-conspiracy, common law fraud, negligent misrepresentation, suppression of truth, and deceit [1], will predominate over the issues common to the entire class. *See Basic, Inc.,* 485 U.S. at 242, 108 S.Ct. 978; *Freeman,* 915 F.2d at 198; *O'Neil,* 165 F.R.D. at 505–506. *See also Serfaty v. International Automated Systems,* 180 F.R.D. 418, 423 (D.Utah 1998) (denying motion for class certification in securities fraud case because individualized proof of reliance predominated common issues of fact and law). Plaintiff Yadlsoky cannot meet the predominance requirement of Rule 23(b)(3).

■ Plaintiff's argument that the dissemination of the same written materials to "virtually all" class members warrants finding that the proposed class meets the requirements of Rule 23(b)(3) is not well taken. The written materials proffered by Yadlosky establish that the price for MCA pool certificates was established by MCA, not an efficient market. Further, plaintiff Yadlosky's own deposition testimony indicates that he relied primarily on oral representations when deciding to purchase his MCA securities. Class action status is usually inappropriate where oral representations are relied upon to support fraud claims, due to the highly individualized nature of the statements. *See Kaser v. Swann,* 141 F.R.D. 337, 339 (M.D.Fla. 1991). Although an exception exists where a standard presentation was made to all the members of the class, *id.* at 340, plaintiff Yadlosky has sued ten separate brokers/dealers that allegedly made misrepresentations to 2811 individual investors over the course of thirteen years. The standard presentation exception simply does not apply here. *See Converse v. Ameritech Corp.,* 179 F.R.D. 533 (W.D.Mich.1997) (denying class certification where individual reliance had to be proven as to each phone customer based on various written advertisements and conversations with service representatives).

Yadlosky's argument that the RICO claims lend themselves to resolution by way of a class action lawsuit is without merit. 18 U.S.C. § 1964(c), which provides for RICO civil liability, reads:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.* The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(emphasis added). While the court is aware that the merits of Yadlosky's claims are not at issue, the court cannot ignore the high probability that plaintiff's RICO are not actionable. *See Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156 (3d Cir.1998); *Aries Aluminum Corp. v. King,* 194 F.3d 1311, 1999 WL 801523 (6th Cir.1999).

### B. State Law Claims

■ The defendants also argue plaintiff Yadlosky's state common law claims will most probably require applying varying state laws, depending upon the state of residence of the investor, causing individual issues to further predominate over issues common to the class. Plaintiff Yadlosky is a Michigan resident, and does not oppose the defendant brokers/dealers' assertion that MCA pool certificates were sold to residents of Missouri, California, Arizona, Tennessee, Georgia, Kentucky, Nevada, Alabama, South Carolina, New Jersey, Illinois, Virginia, North

---

1. Under Michigan law, reliance is an element of negligent misrepresentation, *Law Offices of Lawrence J. Stockler, P.C. v. Rose,* 174 Mich.App. 14, 44, 436 N.W.2d 70 (1989), suppression of truth or "silent fraud", *Hord v. Environmental Re-*

*search Institute of Michigan,* 228 Mich.App. 638, 645, 579 N.W.2d 133 (1998), and deceit, *United States Fidelity and Guaranty Co. v. Black,* 412 Mich. 99, 114, 121–123, 313 N.W.2d 77 (1981).

Carolina, Texas, Colorado, and Maryland. While state law variations alone are not enough to support denying class certification, they should be considered in the analysis. *In re Jackson National Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 223 (W.D.Mich.1998). The plaintiff bears the burden of proving that state law variations do not predominate over common issues. *Id.* at 222–223.

In reversing class certification for lack of predominance of common issues, the Sixth Circuit reasoned in *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir.1996):

> The judge certified a nationwide class in this case. If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action. *See, e.g.* [*In re Northern Dist. of Calif., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 850 (9th Cir.1982) ].

*Id.* at 1085. Defendants have proffered an appendix illustrating various differences among the state laws.

 Plaintiff Yadlosky argues Michigan law applies uniformly to all 2811 investors because the written offerings for MCA pool certificates state:

> 18. *Governing Law.* This Agreement shall be construed in accordance with the laws of the State of Michigan and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

"It is a well-accepted principle that a federal court in a diversity case must apply the conflict of law rules of the state in which it sits." *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir.1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir.1983)). Under Michigan conflict of law rules, a contractual choice of law provision will govern unless either: (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or; (2) applica-

tion of the law of the chosen state would be contrary to a fundamental policy of the state which has a materially greater interest. *Id.* at 360–361.

 "[T]he choice-of-law analysis is a matter of due process and is not to be altered in a nationwide class action simply because it may otherwise result in procedural and management difficulties." *In re Jackson National Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 223 (W.D.Mich.1998) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). It would be constitutionally improper to apply the forum state's law if the transactions at issue had little or no relationship with the forum state and the parties had not been advised that the forum state's laws would apply. *See Shutts*, 472 U.S. at 821–822, 105 S.Ct. 2965. "[D]ue process requires individual consideration of the choice of law issues raised by each class member's case before certification." *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332, 348 (D.N.J.1997). "The *Shutts* opinion merely requires a showing that there are sufficient contacts between the forum state and each individual class member's claims to create forum interests in the litigation such that application of forum law will not be arbitrary or unfair." *In re Kirschner Medical Corp. Securities Litigation*, 139 F.R.D. 74, 84 (D.Md.1991).

 Plaintiff Yadlosky's argument that the choice of law provision in the pool certificate offering mandates the uniform application of Michigan law to all 2811 investors claims is not well taken. To begin, the choice of law provision in the pool certificate offering does not govern the choice of law issue relative to the purchase of other MCA securities, being stocks, bonds, and shares in limited partnerships. Further, plaintiff fails to even address whether application of Michigan law to each of the 2811 investors' claims would be contrary to a fundamental policy of the state of a non-Michigan investor. *See Banek Inc.*, 6 F.3d at 360–361. Plaintiff Yadlosky alleges fraud, negligent misrepresentation, suppression of truth, deceit, negligent and wanton supervision, Michigan statu-

tory violations, and breach of contract on behalf of investors from Michigan, Missouri, California, Arizona, Tennessee, Georgia, Kentucky, Nevada, Alabama, South Carolina, New Jersey, Illinois, Virginia, North Carolina, Texas, Colorado, and Maryland against the several defendant "national securities brokerage firm[s]" incorporated in and/or having their principal place of business in Michigan, Ohio, Delaware, Alabama, Georgia, and Nevada. Plaintiff Yadlosky has not met his burden of showing there are sufficient contacts between Michigan and the non-Michigan investors' state law claims to create a sufficient state interest in this litigation to apply Michigan law. Failing that burden, application of Michigan law to non-Michigan investors would be arbitrary or unfair. *Shutts,* 472 U.S. at 821–822, 105 S.Ct. 2965; *In re Kirschner Medical Corp.,* 139 F.R.D. at 84. Consequently, more that a few states laws will likely apply.

Michigan's Uniform Securities Act provides one example where the application of Michigan law would be contrary to a fundamental policy of the state of a non-Michigan investor. *See Banek, Inc.,* 6 F.3d at 360–361. Michigan's Uniform Securities Act does not apply to sales made outside of Michigan unless the offer "originates" from Michigan. *See* M.C.L. § 451.814(a), (c-d). Counts XI and XII of plaintiff Yadlosky's second amended complaint allege state securities fraud claims under M.C.L. § 451.501 and § 451.810 of the Act. A non-Michigan investor who purchased an MCA security outside of Michigan based on an offer that did not originate in Michigan would be precluded from pursuing a state securities fraud claim even though the investor's home state would provide such relief. *See e.g.* Calif. Corp. Code §§ 25401, 25501 (permitting a security purchaser to recover damages from any person who offers or sells a security in California by means of a written or oral communication which includes an untrue statement of material fact or omits a material fact). "A court needs to make a choice of law determination, in the first instance, when a controversy and the parties thereto have contacts with states other than, or in addition to, the forum state, and the interested other state's substantive laws are in conflict, i.e., they

would lead to a different result." Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 13.29, (3rd ed.1992). Here, if Michigan law is applied to a California purchaser, the California investor's state securities fraud claims are subject to dismissal on the basis that the purchase was made outside of Michigan even though his state of residence, California, has expressed a substantial interest in protecting California citizens from securities fraud.

▮ Plaintiff Yadlosky has not met his burden of establishing that state law variations in this lawsuit do not predominate over common issues. *In re Jackson National Life Ins. Co.,* 183 F.R.D. at 222–223. To the contrary, it appears application of Michigan law to all of the 2811 investors would be contrary to the policies of other state "blue-sky" laws. *See Banek Inc.,* 6 F.3d at 361–362. Even if only a few of the state laws differ, this court would face an impossible task of instructing the jury on the relevant state law, undermining a determination of "predominance" and "superiority" under Rule 23(b)(3). *See In re American Medical Systems, Inc.,* 75 F.3d at 1085.

### C. Conclusion as to Rule 23(b)(3).

Plaintiff Yadlosky has not demonstrated that this lawsuit meets the predominance and superiority requirements of Rule 23(b)(3). *Ballan,* 159 F.R.D. at 478. Individual issues of reliance will predominate over the common issues of the proposed class. Application of varying state law standards among the 2811 investors likewise supports denying class certification under Rule 23(b)(3). The requirements for class certification under Rule 23(b)(3) have not been met.

### II. Commonality—Rule 23(a)(2)

Consistent with the analysis in Section I., A., *supra,* plaintiff Yadlosky's allegations of a "common course of conduct" satisfy the commonality requirement of Rule 23(a)(2), requiring only one question common to the class. *In re Computer Memories Securities Litigation,* 111 F.R.D. at 684; *Sprague,* 133 F.3d at 397. The requirements for class

certification under Rule 23(a)(2) have been met.

### III. Numerosity—Rule 23(a)(1)

The defendants, primarily Multi–Bank Securities, Inc., argue Yadlosky, as the lead plaintiff, lacks "standing" to allege claims on behalf of the 2811 potential class members because Yadlosky himself did not deal with all of the named brokers/dealers defendants when making his eight alleged MCA securities purchases. Multi–Bank asserts it sold pool certificates from three of the 144 pools to a total of seven investors, and that Yadlosky did not purchase his securities from Multi–Bank.

The general rule is that the requirements for class certification under Rule 23 must be satisfied with respect to each defendant. *See Thompson v. Bd. of Ed. of Romeo Community Schools*, 709 F.2d 1200 (6th Cir.1983); *National Assoc. of Gov't Employees v. City Public Service Board of San Antonio*, 40 F.3d 698 (5th Cir.1994); *Daley's Dump Truck Service, Inc. v. Kiewit Pacific Co.*, 759 F.Supp. 1498 (W.D.Wash.1991). The Sixth Circuit recognizes an exception to the standing requirement where, as here, the plaintiff alleges "all injuries are the result of a conspiracy or concerted schemes." *Thompson*, 709 F.2d at 1204. The proposed class action involving 2811 investors meets the Rule 23(a)(1) numerosity requirement that the joinder of all 2811 investors to this lawsuit would be impractical.

### IV. Typicality–Rule 23(a)(3)

Defendants argue plaintiff Yadlosky is subject to a unique personal defenses that are likely to be a major force of the litigation, thereby undermining a finding of typicality. *See O'Neil*, 165 F.R.D. at 491; *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1016 (W.D.Mich.1987); *In re Mutual Savings Bank Sec. Lit.*, 166 F.R.D. 377 (E.D.Mich.1996). Specifically, defendants assert a three year statute of limitations defense as to the federal securities claims, and the fact that the defendant auditors did not audit the pool certificates, are defenses unique to Yadlosky.

The court is not persuaded these defenses are unique to Yadlosky. It appears that the federal statute of limitations defense would be applicable to all class members that purchased prior to June 28, 1996, being three years prior to Yadlosky's filing of the initial complaint. The argument that the auditors did not audit the pool certificates applies equally to all proposed class members who purchased pool certificates.

The statute of limitations and standing defenses are not unique to Yadlosky. To the extent the arguments against a finding of typicality under Rule 23(a)(3) do not overlap into the predominance requirement of Rule 23(b)(3), plaintiff Yadlosky has met the typicality requirement of Rule 23(a)(3).

### V. Adequacy of Representation— Rule 23(a)(4)

Defendants' arguments regarding the adequacy of representation go to the requirement that the named plaintiff must not have claims antagonistic to other class members. *See Smith v. Babcock*, 19 F.3d 257, 265 n. 13 (6th Cir.1994) (stating that "[n]o class should be certified where the interests of the class are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard"). Defendants argue Yadlosky is attempting to represent the conflicting interests of debt and equity holders of MCA securities—those interested in seeing MCA retain its 5% interest in the various pools—and the holders of pool certificates—those interested in divesting MCA's 5% interest.

Under Rule 23(c)(4), the court is permitted to divide the proposed class of 2811 investors into subclasses. *See* Fed.R.Civ.P. 23(c)(4). All proposed class members share a common interest in holding the several defendants liable for securities fraud. The asserted conflict created by the interests represented by the different MCA securities does not pose a problem that cannot be remedied by the creation of subclasses, short of denying class certification for failure to meet the adequacy of representation requirements of Rule 23(c)(4). Again, to the extent there is no overlap with the predominance requirement of Rule 23(b)(3), plaintiff Yadlosky has dem-

onstrated he would fairly and adequately protect the interests of the proposed class.

## CONCLUSION

Plaintiff Yadlosky fails to meet the class certification requirements of Rule 23(b)(3). Accordingly, plaintiff Yadlosky's motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) is hereby DENIED.

SO ORDERED.