IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0505
════════════
 
Citizens Insurance Company of 
America, Citizens, Inc., Harold Riley, and Mark Oliver, Petitioners,
 
v.
 
Dr. Fernando Hakim Daccach, 
on behalf of himself and all others similarly situated, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 21, 
2004
 
Justice Wainwright delivered the 
opinion of a unanimous Court as to sections I-III and V-VIII; the opinion of the 
Court as to sections IV-A, IV-C, and IV-D, joined by Justice Hecht, Justice O’Neill, Justice 
Green, Justice Johnson, 
and Justice Willett; and a 
concurring opinion as to section IV-B, joined by Justice Johnson.
 
Chief Justice Jefferson filed a 
concurring opinion, joined by Justice 
Brister and Justice 
Medina.
 
In this 
interlocutory appeal petitioners challenge a trial court’s order certifying a 
worldwide class. Dr. Fernando Hakim Daccach, the class’s representative, alleges 
that petitioners Citizens Insurance Company of America (CICA), Citizens, Inc., 
Harold E. Riley, and Mark A. Oliver (collectively Citizens) sold securities from 
Texas to nonresidents without complying with the registration requirements of 
the Texas Securities Act. The court of appeals modified the class definition and 
affirmed the trial court’s certification of the class. 105 S.W.3d 712. Because 
we conclude the trial court did not consider the effect of res judicata on the 
adequacy of the class representative, the superiority of litigating this case as 
a class action, the typicality of claims within the class, and the predominance 
of common issues over individual issues, we decertify the class and remand the 
case to the trial court for further proceedings consistent with this 
opinion.
I. Background
Citizens, 
Inc. and its wholly-owned subsidiary CICA are Colorado corporations with their 
principal places of business in Austin, Texas. Riley and Oliver are officers and 
directors of Citizens, Inc. Citizens sells life insurance policies (CICA 
policies) through foreign insurance agents exclusively to persons outside of the 
United States. The purchasers reside in over thirty-five countries including the 
United States. The CICA policies allow policyholders to assign policy dividends 
and other benefits to offshore trusts. The trusts use the assigned dividends and 
other benefits to purchase common stock in Citizens, Inc. Each year since 1996 
there have been approximately 30,000 CICA policies in effect, with each 
policyholder paying an average annual premium of around $2,000. Id. 
at 717. At least seventy‑five percent of these policyholders have assigned 
their policy dividends and other benefits to the offshore trusts. Id.
The CICA 
policies are not registered with the Texas State Securities Board, Texas 
Department of Insurance, nor any other regulatory body in the United States, 
although the common stock purchased with policy dividends is listed on the 
American Stock Exchange. Similarly, neither Citizens nor its salespersons have 
registered with any regulatory body in Texas or elsewhere in the United States. 
Citizens also asserts that the CICA policies are not subject to regulation in 
the countries in which the policyholders reside.
On August 6, 
1999, Delia Bolanos Andrade and Luis Martin Tapia Alberti, both residents and 
citizens of Colombia, South America, filed a class action against Citizens in 
Texas state court. The original petition alleged several causes of action 
related to the CICA policies, including (1) violations of the Texas Deceptive 
Trade Practices Act, (2) breach of contract, (3) fraud, (4) fraud in the 
inducement, (5) negligent misrepresentation, (6) breach of the duty of good 
faith and fair dealing, (7) violations of the Texas Insurance Code, (8) 
equitable reformation of the policies, (9) conspiracy to plan and implement this 
scheme, and (10) unjust enrichment and the imposition of a constructive trust. 
On December 15, 2000, the class plaintiffs filed a second amended original 
petition to add a cause of action under the Texas Securities Act for selling 
securities in this state without first being registered. See Tex. Rev. Civ. Stat. arts. 581-12A, 
581-33A(1).[1] By this time seven new plaintiffs had 
been added to the lawsuit, including Daccach.
On June 29, 
2001, Daccach filed a motion for class certification in which he sought 
designation as the class representative and alleged against Citizens only one 
class claim: selling or offering securities from Texas in the form of the CICA 
policies without registering with the Texas Securities Board. See Tex. Rev. Civ. Stat. arts. 581-12A, 
581-33A(1), 581-33D(1), D(3). Daccach expressly disclaimed any intention to 
pursue the other causes of action in the class suit. In the sixth amended 
petition, filed the same day as the first amended motion for class 
certification, the other plaintiffs pled the original claims against Citizens as 
individuals, not as class representatives. The trial court has not ruled on 
Daccach’s motion to sever the class claims.
Challenging 
Daccach’s motion for class certification, Citizens argued that Texas law should 
not apply to this worldwide class action and that Daccach’s abandonment of 
claims defeats certification prerequisites. In response, Daccach presented 
alternate choice of law analyses all of which directed the application of Texas 
law, but none of his theories analyzed the laws of other jurisdictions. 
After 
conducting a four‑day hearing, the trial court granted Daccach’s motion in a 
twenty‑page class certification order. The order’s nine‑page trial plan 
identified four class‑wide issues to be resolved at trial: (1) whether a CICA 
Policy is a “security” pursuant to the Securities Act (including the question of 
whether the CICA policies fall within an insurance exception to the Securities 
Act); (2) whether Citizens sold or offered for sale the CICA policies from 
Texas; (3) the calculation of the statutory remedy pursuant to the Securities 
Act; and (4) attorney’s fees. The order defined the class as follows:
 
The Class 
consists of all persons, who, during the Class Period (August 6, 1996 through 
the date the Class is certified): (1) purchased a CICA Policy and executed an 
assignment to a trust for the purchase of Citizens, Inc. stock, or (2) paid any 
money that, pursuant to a CICA Policy and assignment to a trust, was for the 
purchase of Citizens, Inc. stock, or (3) were entitled to any cash benefits from 
a CICA Policy that, pursuant to a CICA Policy and assignment to a trust, were 
for the purchase of Citizens, Inc. stock. Specifically excluded from the Class 
are all persons who, within the time period established by the judgment, do not 
surrender their CICA Policies and take the other actions required to obtain the 
relief awarded by the Court.
 
 
Citizens 
brought an interlocutory appeal challenging the trial court’s certification 
order. See Tex. Civ. Prac. & 
Rem. Code § 51.014(a)(3). Citizens argued that the trial court abused its 
discretion in granting Daccach’s motion for class certification. First, Citizens 
challenged the adequacy of the trial court’s class definition. Second, it argued 
that the trial court failed to conduct a proper choice of law analysis to 
determine whether common issues predominate over individual issues. Third, 
Citizens argued that the trial court failed to adequately establish the class 
certification prerequisites. The court of appeals rejected all three points, 
holding that: the class definition, after a one-word modification, precisely 
ascertains the class members;[2] the trial court was not required to 
engage in a “most significant relationship” choice of law analysis; and the 
trial court did not abuse its discretion by finding that the class certification 
requirements had been met. 105 S.W.3d at 729-30.
Citizens then 
petitioned this Court for review. Specifically, Citizens contends that the court 
of appeals erred in (1) affirming the certification of an improper fail-safe 
class, whose members are not presently ascertainable, and eviscerating material 
defenses; (2) not applying the “most significant relationship” test to resolve 
choice-of-law issues; (3) determining that common legal and factual issues 
predominate despite that calculating attorney’s fees will be an overwhelming 
task requiring the discovery and resolution of circumstances surrounding life 
insurance sales in over fifty foreign jurisdictions; (4) affirming that a class 
action is superior to individual claims despite the fact that certification 
requires dismissal of ten of the eleven original claims and that this is not a 
negative value suit;[3] (5) agreeing, without explanation, 
that the trial court will be able to implement the statutory remedy of 
rescission even though the beneficial interests of the policies are held in 
offshore trusts not parties to this case; (6) affirming that Texas Rule of Civil 
Procedure 42(a)’s typicality requirement was met despite the presence of a 
statute of limitations defense against the class plaintiff and the class 
plaintiff’s dismissal of ten of the eleven originally alleged claims; and (7) 
holding that previously asserted, and now abandoned, individual claims of class 
members would not be barred by res judicata, thereby reading Rule 42 as an 
exception to the Court’s transactional approach to claim preclusion. We granted 
Citizens’ petition for review.
II. Jurisdiction
Section 
51.014(a)(3) of the Texas Civil Practice and Remedies Code allows the 
interlocutory appeal of class certification orders. Although interlocutory 
appeals are generally final in the courts of appeals, this Court has 
jurisdiction over an interlocutory appeal if the court of appeals “holds 
differently from a prior decision of another court of appeals or of the supreme 
court.” Tex. Gov’t Code 
§§ 22.001(a)(2), 22.225(b)(3), (c).[4] “[T]wo decisions hold differently or 
conflict when the rulings in the two cases are so far upon the same state of 
facts that the decision of one case is necessarily conclusive of the decision in 
the other.” Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 687 (Tex. 
2002) (internal quotation marks omitted) (citing Christy v. Williams, 298 
S.W.2d 565, 567 (Tex. 1957)).
In 
Intratex Gas Co. v. Beeson, we held that the trial court abused its 
discretion by certifying a fail-safe class. 22 S.W.3d 398 (Tex. 2000). A 
fail-safe class is a class bound only by a judgment for the plaintiffs. Id. 
at 402. In such a case, “[a] determination that the defendant is not liable 
. . . obviates the class, thereby precluding the proposed class members from 
being bound by the judgment.” Id. at 405. We rejected that outcome 
because Rule 42(b) was never intended to be an exception to res judicata. 
In this case, 
the court of appeals held that the class’s claim under the Texas Securities Act 
met the predominance requirements of Rule 42 even if the class abandoned other 
potential claims to meet that requirement. The court explained: “‘Clients who 
have claims not raised in this class action because the claims are unsuitable 
for class treatment can bring those claims on an individual basis, and res 
judicata will not bar those claims because absent class members had no 
opportunity to litigate those issues in this lawsuit.’” 105 S.W.3d at 725 
(quoting Sullivan v. Chase Inv. Servs. of Boston, Inc., 79 F.R.D. 246, 
265 (N.D. Cal. 1978)). The court of appeals’ creation of a special exception to 
established principles of claim preclusion conflicts with this Court’s holding 
in Beeson. Accordingly, we have jurisdiction over this appeal. 
III. General Certification Requirements
All class 
actions must satisfy four prerequisites: (1) numerosity—the class is so numerous 
that joinder of all members is impracticable; (2) commonality—there are 
questions of law or fact common to the class; (3) typicality—the claims or 
defenses of the representative parties are typical of the claims or defenses of 
the class; and (4) adequacy of representation—the representative parties will 
fairly and adequately protect the interests of the class. Tex. R. Civ. P. 42(a); see also Sw. 
Ref. Co. v. Bernal, 22 S.W.3d 425, 435 (Tex. 2000). In addition, a class 
action must satisfy at least one of the requirements in Rule 42(b). Here Daccach 
argues the class action satisfies Rule 42(b)(3),[5] which requires that “questions of law 
or fact common to the members of the class predominate over any questions 
affecting only individual members” and that class treatment be “superior to 
other available methods for the fair and efficient adjudication of the 
controversy.” Rule 42 contains a list of nonexhaustive factors to aid a court in 
determining if (b)(3) certification is appropriate:
 
(A) the 
interest of members of the class in individually controlling the prosecution or 
defense of separate actions; (B) the extent and nature of any litigation 
concerning the controversy already commenced by or against members of the class; 
(C) the desirability or undesirability of concentrating the litigation of the 
claims in the particular forum; (D) the difficulties likely to be encountered in 
the management of a class action.
 
 
Tex. R. Civ. P. 42(b)(3).
In 
Bernal, we explained that to properly apply the certification 
prerequisites, a trial court must perform a “rigorous analysis.” 22 S.W.3d at 
435. And to correctly determine these certification issues, a certifying court 
must “understand the claims, defenses, relevant facts, and applicable 
substantive law.” Id. This understanding requires a choice of law 
analysis at the outset anytime there is an issue of which of several 
jurisdictions’ laws should govern a case. Compaq Computer Corp. v. 
Lapray, 135 S.W.3d 657, 672 (Tex. 2004) (“[Variations in the laws of 
multiple jurisdictions] ‘may swamp any common issues and defeat predominance.’” 
(quoting Castano v. Am. Tobacco Co., 84 S.W.3d 734, 741 (5th Cir. 
1996))). The threshold question, therefore, is whether the trial court conducted 
a proper choice of law analysis and correctly decided that Texas law governs 
this class suit. Compaq, 135 S.W.3d at 741.
IV. Choice of Law
A. Plain Language of Section 12
“[W]hen 
ruling on motions for class certifications, trial courts must conduct an 
extensive choice of law analysis before they can determine predominance, 
superiority, cohesiveness, and even manageability.” Id. This analysis 
arms the court with information necessary to determine if questions of law or 
fact common to the members of the class will predominate over any questions 
affecting only individual members. See Tex. R. Civ. P. 42(b)(3). Common 
questions of law may not predominate if class members’ claims are not governed 
by the same law. Schein, 102 S.W.3d at 695-99. Here, Daccach, as class 
representative, bears the burden of showing that Texas law applies to the 
class’s claim. Compaq, 135 S.W.3d at 672.
Daccach 
alleges that the defendants violated the Texas Securities Act by offering or 
selling securities from Texas without registering with the Texas Securities 
Board. He argues that the Texas Securities Act directs the application of Texas 
law notwithstanding the presumed interests of the forums in which the plaintiffs 
reside. He explains that the defendants were Texas residents doing business in 
Texas at all relevant times. Daccach argues that an analysis of other 
jurisdictions’ laws is unnecessary because (1) Citizens is estopped from arguing 
the applicability of foreign laws because of its previous position that the CICA 
policies were not subject to foreign regulation, and (2) the registration 
provision of the Texas Securities Act directs the application of Texas law in 
this case, rendering unnecessary a comparison of other potentially applicable 
jurisdictions’ laws.
Citizens 
argues that the pleadings show that the dispute implicates interests of over 
thirty-five jurisdictions where the putative class members reside. Citizens 
asserts that, at a minimum, the pleadings require the trial court to conduct an 
extensive analysis of potential conflicts among other jurisdictions’ laws and 
determine which jurisdiction has the most significant relationship to the class 
claim. See Restatement (Second) 
of Conflicts of Laws § 6 (1971). Citizens contends that failing to do so 
violates the Due Process Clause of the U.S. Constitution. See Phillips 
Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).
In the class 
certification order, the trial court concluded:
 
The Class 
Plaintiff has asserted only one cause of action for which he seeks class 
certification, that is, violations of the Texas Securities Act. At the 
certification hearing, the Class Plaintiff presented evidence of numerous 
activities of the Defendants in Texas relating to the CICA policies. 
Accordingly, the Court concludes that for purposes of class certification, Texas 
law applies.
 
 
The court of 
appeals held that under section 6(1) of the Restatement (Second) of Conflict of 
Laws, Texas law applies because the Texas statute directs that it apply. 105 
S.W.3d at 723-24.
As an initial 
matter, we reject Daccach’s estoppel argument. We have explained that “[a] court 
may not accept ‘on faith’ a party’s assertion that no variations in [other 
jurisdictions’] laws exist.” Compaq, 135 S.W.3d at 672-73. The court must 
determine which substantive law governs the case. See Shutts, 472 U.S. at 
820 (“plaintiff’s desire for forum law is rarely, if ever controlling”); 
Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349, 352 (Tex. App.—Houston 
[14th Dist.] 2003, no pet.). Which jurisdiction’s substantive law governs is 
ultimately a question of law for the court. Compaq, 135 S.W.3d at 
672.
Daccach 
pleads a single cause of action on behalf of the class: Citizens violated 
section 12 of the Texas Securities Act that requires dealers in Texas who offer 
or sell securities to register with the Texas Securities Board. See Tex. Civ. Stat. arts. 581-12A, 
581-33A(1). No one disputes that Citizens was doing business in Texas and 
physically present in Texas when it sold the CICA policies to class members. 

Texas has a 
strong interest in regulating the sale of securities in and from the state. The 
Section 12 registration provisions indemnify investors victimized by violations 
of the Texas Securities Act, encourages compliance with its regulatory and 
disclosure provisions, creates an incentive for its private enforcement, and 
guards the integrity of the state’s securities industry by protecting resident 
sellers who operate in compliance with the law. See Tex. Civ. Stat. art. 581-33 cmt. 
background–1977; Rio Grande Oil Co. v. State, 539 S.W.2d 917, 921 (Tex. 
Civ. App.—Houston [1st Dist.] 1976, writ ref’d n.r.e.) (“A state is damaged if 
its citizens are permitted to engage in fraudulent [securities] practices even 
though those injured are outside its borders.”); see also Unif. Sec. Act–1956, § 414(a)-(f) cmt. 
3, 7C U.L.A. 941 (2006) (noting that state Blue Sky laws are also intended to 
prevent use of a state as a base of operations to defraud persons in other 
states); Joseph C. Long, The Conflict of Laws Provisions of the Uniform 
Securities Acts or When Does a Transaction “Take Place in the State?”, 31 
Okla. L. Rev. 781, 784 (1978); 
Louis Loss, The Conflict of Laws and the Blue Sky Laws, 71 Harv. L. Rev. 209, 225 n.50 (1957); 
Jack E. McClard, The Applicability of Local Securities Acts to Multi-State 
Securities Transactions, 20 U. Rich. 
L. Rev. 139, 142 (1985). Because the class lawsuit only alleges Citizens’ 
failure to register with the Texas Securities Board before allegedly offering 
and selling securities from Texas, Section 12 governs under any conflict of law 
principles that might apply.
Absent unique 
statutory circumstances, trial courts must conduct the extensive choice of law 
analysis described in Compaq before making a certification decision. 
Compaq, 135 S.W.3d at 672. In Compaq, the class alleged a Uniform 
Commercial Code breach of an express warranty claim occurring in all fifty 
states. See id. at 672-73. We held that the trial court erroneously 
applied Texas law after a cursory review and failed to analyze the relevant law 
of each state. However, a claimed failure to register as a dealer before 
offering or selling securities is different. Securities offered or sold in 
multiple states may be subject to the registration requirements of each state in 
which an offer or sale is made. See Lintz v. Carey Manor, Ltd., 613 
F.Supp. 543, 550 (D.C. Va. 1985); Michael A. Hanzman, The Reach of State Blue 
Sky Laws—A Potentially Dangerous Trap for the Unwary Practitioner, 63 Fla. B.J. 16, 19 (1989) (“[J]ust as one 
transaction can violate both federal and state law simultaneously, it can 
violate several blue sky laws simultaneously.”); see also 69A Am. Jur. 2D Securities 
Regulation § 18 (2006) (stating more broadly than held here that “all of the 
blue sky laws of all the jurisdictions apply to the transactions which are 
within the bounds of the statute”). Multiple registration requirements of 
multiple states may govern the dealer’s conduct and give rise to several 
statutory violations. See Chrysler Capital Corp. v. Century Power Corp., 
1992 WL 163006 (S.D.N.Y. 1992) (unpublished); Simms Inv. Co. v. E.F. Hutton 
& Co., 699 F.Supp. 543, 545 (M.D. N.C. 1988) (“The court has firmly 
concluded that the securities laws of two or more states may be applicable to a 
single transaction without presenting a conflicts of laws question.”) ; see 
also Unif. Sec. Act–1956, § 
414(a)-(f) cmt. 3, 7C U.L.A. 941 (2006); Joseph C. Long, 12 Blue Sky Law §§ 3.01 n.2.2, 3.02[1] 
n.13 (rev. ed. 1988); Louis Loss & 
Joel Seligman, Fundamentals of 
Security Regulation 92–94 (3d ed. 1989); McClard, 20 U. Rich. L. Rev. at 141. Thus, a claim 
based on the failure to register with the Texas Securities Board before offering 
or selling securities from Texas does not present a classic conflict of laws 
problem. We do not hold that the Texas Securities Act directs the application of 
the Texas Blue Sky laws[6] in every securities case involving 
facts touching Texas or its residents. The question is one of legislative intent 
as to the particular provision at issue, subject to constitutional limitations. 

We recognize 
that violations of other securities laws, such as those based on 
misrepresentation, may well be subject to a different analysis. See Tracker 
Marine, L.P., 108 S.W.3d at 359; Loss, 71 Harv. L. Rev. at 209 (indicating that 
unlike registration requirements, presumably the conflict of laws rules for 
anti-fraud aspects of the blue sky laws are not too different from “the rules 
for common-law deceit or rescission”). But those types of claims are not raised 
here.
The 
concurrence would require a thorough comparison of the laws of the jurisdictions 
implicated by the pleadings, even though the only claim at issue is that Texas 
residents offered or sold securities from Texas without registering with the 
Texas Securities Board. The concurrence asserts that the Court’s choice of law 
determination “risks making Texas a magnet forum for national and international 
class actions.” __ S.W.3d __, __. We do not hold, contrary to the concurrence’s 
indication, that a class may gain application of Texas law by simply suing in 
Texas on a Texas statute or on any Texas Blue Sky provision. It is the rare 
class suit in which a Texas court reaches a permissible conclusion on choice of 
law without an extensive analysis. 
The 
concurrence also argues that the Court allows “the simple institution of a 
multistate class suit” to create a “substantial threat to our constitutional 
system of cooperative federalism.” Id. at __ (quoting 4 Herbert B. Newberg & Alba Conte, Newberg 
on Class Actions § 13.37 (4th ed. 2002). As explained, the filing of suit 
in Texas is not the basis for the choice of law determination. The determinative 
question is not where the class suit was filed, but, under principles of 
statutory interpretation, whether the resident defendants’ actions in Texas 
constitute conduct the Legislature intended to regulate. This holding offends 
neither the U.S. Constitution nor principles of federalism.
Further, the 
concurrence fails to explain the parameters of its approach. Which of the other 
jurisdictions’ laws may govern the failure to register in Texas? Which 
jurisdictions’ laws should be studied and compared to Section 12(A), the only 
claim alleged? Neither the pleadings nor the class definition assert the 
violation of the common law or another jurisdiction’s statute prohibiting the 
sale of securities to or from Texas by a resident dealer not registered in 
Texas. We do not compel plaintiffs in individual suits to plead the violation of 
all potentially applicable laws, yet the concurrence would impose that burden on 
class plaintiffs. Daccach was not required to present a global overview of 
potentially applicable securities registration laws to pursue a claim against 
Citizens for selling or offering securities in or from Texas as an unregistered 
dealer. See Irving L. Faught & Z. Faye Martin Morton, Recent 
Developments in Securities Law: USA 2002—Something Old, Something New . . ., 
60 Consumer Fin. L.Q. Rep. 58, 60 
(2006); Larry Kramer, Choice of Law in Complex Litigation, 71 N.Y.U. L. Rev. 547, 549 (1996); Larry 
Kramer, Rethinking Choice of Law, 90 Colum. Law Rev. 277, 284–87 (1990) 
(reasoning that the choice of law analysis of the class’s claim should not be 
evaluated differently than it would be if brought by an individual). The trial 
court correctly concluded that the Texas Securities Act applies to this 
suit.
B. The Restatement Approach
In the 
alternative, the registration requirement in the Texas Securities Act contains a 
statutory directive compelling the application of Texas law. This Court uses the 
analysis described in the Restatement (Second) of Conflicts of Laws to resolve 
choice of law issues and select the particular substantive issue that governs a 
case. See Hughes Woods Prods., Inc. v. Wagner, 18 S.W.3d 202, 203-04 
(Tex. 2000); Schein, 102 S.W.2d at 696-99. Section 6 of the Restatement 
provides: 
 
(1)        
A court, subject to constitutional restrictions, will follow a statutory 
directive of its own state on choice of law.
 
(2)        
When there is no such directive, the factors relevant to the choice of the 
applicable rule of law include
 
(a)        
the needs of the interstate and international systems,
(b)        
the relevant policies of the forum, 
(c)        
the relevant policies of other interested states and the relative interests of 
those states in the determination of the particular issue,
(d)        
the protection of justified expectations,
(e)        
the basic policies underlying the particular field of law,
(f)         
certainty, predictability and uniformity of result, and
(g)        
ease in the determination and application of the law to be applied.
 
 
Restatement (Second) of Conflicts of 
Laws § 6 (1971). 
The 
Restatement identifies a framework many courts follow when deciding which 
jurisdiction’s law applies. The first question is whether the particular 
substantive law is subject to a clear choice of law determination by the 
Legislature of the forum state. See Marmon v. Mustang Aviation, 430 
S.W.2d 182 (Tex. 1968). If there is such a directive, a court examines the 
directive in light of constitutional limitations that might preclude application 
of the local law. If answering the first two inquiries does not resolve the 
issue, a court can apply the forum law if it does not conflict with the laws of 
other interested jurisdictions. See Compaq, 135 S.W.3d at 672. If 
variation in the laws of several interested jurisdictions creates a conflict, 
then courts will apply the significant relationship guidelines of Section 6(2) 
and any other specific sections applicable to the substantive law at issue. 
See Hughes Woods Prods., 18 S.W.3d at 205; see, e.g., Restatement (Second) of Conflicts of Laws 
§ 192 (1971) (relating to the validity or rights created by life 
insurance contracts). 
Under this 
hierarchy, the factors in section 6(2) of the Restatement do not come into play 
if there is statutory guidance that the law is intended to govern the 
transaction. For instance, when the Fifth Circuit applied this analysis to 
project Texas’ choice of law rule for pendant state claims, it declined to look 
to the “most significant relationship” guidelines when a Texas statute provided 
clear choice of law guidance, and held that “‘a court should only resort to the 
§ 6 guidelines in the absence of either a valid contractual agreement between 
the parties regarding the applicable law, or a local statutory provision 
controlling the disposition of the choice of law question.’” Sommers Drug 
Stores Co. v. Corrigan, 883 F.2d 345, 353 (5th Cir. 1989) (emphasis added) 
(quoting Am. Home Assurance Co. v. Safeway Steel Prods. Co., 743 S.W.2d 
693, 697 (Tex. App.—Austin 1987, writ denied)). An examination of the provision 
of the Texas Securities Act at issue shows whether the Texas Legislature 
intended to direct the application of that provision to the facts alleged in 
this case.
The sole 
violation of law alleged by the class is embodied in sections 33A and 12(A) of 
article 581 of the Texas Securities Act concerning liability of sellers of 
securities who fail to register in Texas. The relevant precedent from this Court 
guides the determination of whether Section 12 contains a directive from the 
Legislature to apply Texas law, even though some acts may have occurred outside 
Texas. In Marmon, we stated: 
 
Unless the 
intention to have a statute operate beyond the limits of the state or country is 
clearly expressed or indicated by its language, purpose, subject matter, or 
history, no legislation is presumed to be intended to operate outside the 
territorial jurisdiction of the state or country enacting it. To the contrary, 
the presumption is that the statute is intended to have no extraterritorial 
effect, but to apply only within the territorial jurisdiction of the state or 
country enacting it, and it is generally so construed. An extraterritorial 
effect is not to be given statutes by implication.
 
 
430 S.W.2d at 
187 (citations omitted); see 73 Am. Jur. 2D Statutes 
§ 250 (2006).[7] Determining if the extraterritorial 
reach of Section 12 is “clearly expressed” or otherwise “indicated by its 
language, purpose, subject matter, or history” begins with the language of the 
provision. See Marmon, 430 S.W.2d at 187.
The Texas 
Legislature prohibited the offer or sale of a security “in this state” by any 
company or person, who has not previously complied with the requirement to 
register as a securities dealer or satisfied a dealer, security, or transaction 
exemption from registration. Tex. Civ. 
Stat. arts. 581-12(A), 581-33A. The requirement in Section 12 to register 
before making offers or sales “in this state” attaches to both offers and sales 
of securities and includes both offers or sales from persons in Texas to 
nonresidents and those from out-of-state sellers to Texas residents. See 
__ S.W.3d at __, n.6. Therefore, section 12 requires that persons and companies 
register or satisfy an exemption from registration before making offers or sales 
of securities from locations in Texas to out-of-state purchasers. See 
generally Ennetex Oil & Gas v. State, 560 S.W.2d 494 (Tex. Civ. 
App.—Texarkana 1977, writ ref’d n.r.e.); Rio Grande, 539 S.W.2d 917. 
The Texas 
Securities Board, empowered to administer the securities laws, determined in its 
rules that section 12 of the Texas Securities Act governs “an offer or sale from 
Texas.” 7 Tex. Admin. Code § 
139.7. Section 139.7, entitled “Sale of Securities to Nonresidents,” provides 
that “[a]n issuer or selling agent who makes an offer or sale from Texas, by any 
means . . . is a dealer and must comply with the dealer registration 
requirements of the Securities Act.”
This 
interpretation of Section 12 is supported by the purpose of Texas Blue Sky laws. 
The commentary to Article 581-33 reiterates the long-standing purposes of the 
provision: to indemnify investors victimized by violations of the Texas 
Securities Act, encourage compliance with the Act’s regulatory and disclosure 
provisions, and create incentives for its private enforcement. Tex. Rev. Civ. Stat. art. 581-33 cmt. 
background–1977. Given the nature of securities transactions, achieving these 
purposes will ultimately require that the Act apply to situations that involve 
some out-of-state activities, as when an unregistered dealer in Texas sells 
securities to a nonresident. 
The history 
of choice of law concerns arising in the subject matter of securities also 
supports our interpretation of the language of Section 12. The first Blue Sky 
laws were promulgated in 1910. Julian M. Meer, The Texas Securities Act—1957 
Model: Facelift or Forward Look?, 36 Tex. L. Rev. 429, 430 (1957). By 1957, 
every state except Delaware and Nevada had enacted some form of Blue Sky law to 
regulate securities transactions. Louis Loss, The Conflicts of Laws and the 
Blue Sky Laws, 71 Harv. L. Rev. 
209, 225 (1957); Meer, 36 Tex. L. 
Rev. at 430. Also by 1957, it had become apparent that courts were 
struggling to apply “traditional but unsuitable [common law] choice-of-law 
concepts” to the nationwide scheme of securities regulations. Loss, 71 Harv. L. Rev. at 248. Professor Louis 
Loss, the primary draftsman of the Uniform Securities Act of 1956, reported that 
Blue Sky decisions on choice of law in the securities arena “def[ied] 
generalization.” Id. at 216. The Eighth Circuit Court of Appeals referred 
to the “bewildering state of affairs in the case law governing transactions 
which crossed states lines.” Kreis v. Mates Inv., 473 F.2d 1308, 1311 
(8th Cir. 1973). Professor Loss explained why:
 
When a 
whole area of “public” law owes its very existence to legislation, it is not 
merely anomalous that so important a segment of the area is left to the chance 
application of conflict-of-law concepts developed by the common law in quite 
different contexts; it would be amazing if the result were a reasonably 
satisfactory geographical allocation of the statutes. . . [T]he one solution to 
the multifarious and vexatious problems of the conflict of laws which no blue 
sky state has thus far adopted is the codification route.
 
Loss, 71 Harv. L. Rev. at 248. 
Ultimately, 
the drafters of the Uniform Act rejected citizenship or residence within a 
particular state as the policy base for application of the Uniform Act to 
particular transactions. Joseph C. Long, 
12 Blue Sky Law § 4:2 
(rev. ed. 1988). Instead, they elected a territorial base as the foundation for 
the choice of law decision, requiring that a transaction have some physical 
nexus or acts within the state whose securities statute was alleged to govern. 
Id. The Uniform Act’s approach is that a statute governs a transaction 
and claims arising from it if wrongful acts in the transaction occurred “in this 
state.” Id. § 4:1. The Restatement elaborates:
 
The court 
should give a local statute the range of application intended by the legislature 
when these intentions can be ascertained and can constitutionally be given 
effect. If the legislature intended that the statute should be applied to the 
out-of-state facts involved, the court should so apply it unless constitutional 
considerations forbid.
 
 
Restatement (Second) of Conflicts of 
Laws § 6(1) cmt.(b) (1971). Choice of law in this area of the Blue Sky 
laws is now primarily a matter of statutory interpretation, except, of course, 
for those states that have not legislated choice of law instructions. See 
Benjamin v. Cablevision Programming, 499 N.E.2d 1309, 1316 (Ill. 1986) 
(reasoning that whether the Illinois Securities Act applied to a sale of a 
security from Illinois to a California purchaser was a question of statutory 
construction, and holding that statutory language referencing an offer or a sale 
“in this state” indicated the application of the Illinois securities statute); 
see also 69A Am. Jur. 
2d Securities Regulation § 
18 (2006) (In the area of securities transactions, state Blue Sky laws 
apply to the transactions which “are within the bounds of the statute.”). 
The Texas 
Securities Act was adopted substantially from the Uniform Securities Act. See 
Tex. Rev. Civ. Stat. art. 
581-33, cmt. background–1977 (noting that enactment of article 581-33 in 1963 
was a modification of the Uniform Act). The Texas Legislature incorporated part 
of the Uniform Securities Act in Texas Blue Sky laws, including an important 
term of art in the particular substantive provision at issue here—“in this 
state”—used in connection with mandates to comply with specified regulatory 
requirements, like dealer registration.[8] 
Based on the 
language, purpose, subject matter, and history of the Texas Blue Sky laws and 
the Uniform Securities Act, and the registration requirements in particular, we 
conclude the Texas Legislature intended section 12 of the Texas Securities Act 
to prohibit the unregistered sale of securities from Texas, even when the 
purchasers are nonresidents. This approach does not mean that the Texas 
Securities Act directs the application of the Texas Blue Sky laws in every 
securities case involving facts touching Texas or its residents. The question is 
one of legislative intent as to the particular provision at issue, subject to 
constitutional limitations. See, e.g., Yadlosky v. Grant Thornton 
L.L.P., 197 F.R.D. 292, 301 (E.D. Mich. 2000) (stating, in reference to the 
misrepresentation provisions of the Michigan Blue Sky law, that “it appears 
application of Michigan law to all of the 2811 investors would be contrary to 
the policies of other state ‘blue-sky’ laws”).
 
C. Constitutional 
Limitations on State Regulation of Extraterritorial Conduct
 
The trial 
court must also determine whether the Texas statute meets constitutional 
requirements before it is applied to extraterritorial conduct.[9] Due process requires that the 
application of Texas law be neither arbitrary nor fundamentally unfair. See 
Shutts, 472 U.S. at 818-19, 822. Although the Constitution imposes “modest 
restrictions” on the application of a forum state’s substantive law to conduct 
that occurs, at least in part, outside of the state, to constitutionally select 
a forum state’s law to apply to a class action, the state must have “a 
significant contact or significant aggregation of contacts” to the claims 
asserted by each member of the plaintiff class. Allstate Ins. Co. v. 
Hague, 449 U.S. 302, 313 (1981); see also Travelers Health Ass’n 
v. Virginia, 339 U.S. 643, 649 (1950); Shutts, 472 U.S. at 818. These 
constitutional limitations apply to choice of law determinations in class suits. 
See Shutts, 472 U.S. at 821-22. 
Citizens 
contends that because the court of appeals chose to apply section 6(1) of the 
Restatement in lieu of the most significant relationship test, the court’s 
choice of law analysis did not satisfy the constitutional due process guarantee 
that the application of Texas law be neither arbitrary nor fundamentally unfair. 
Texas has an interest in transactions involving the purchase and sale of 
securities. The constitutional question in this case, then, is whether Texas has 
sufficient contacts with the class members’ transactions to satisfy 
constitutional due process. 
In his 
pleadings and summary judgment evidence presented to the trial court, Daccach 
alleges that all defendants are Texas residents, Citizens maintains its 
principal place of business in Texas, advertising and sales materials were 
created and sent from Texas, a significant portion of the activities related to 
the marketing and creation of the instruments happened in Texas, and Citizens 
devised, implemented, and administered the securities “scheme” in Texas. 
Although Daccach admits that none of the class members are from Texas, he 
maintains that all CICA policies were sold from Texas. Citizens does not contest 
that these activities occurred in Texas, but only argues that these activities 
do not constitute the “sale” of a “security” in Texas. Citizens’ argument 
relates to a contested fact issue set for trial and does not controvert the 
facts alleged. Because Texas has a significant aggregation of contacts to the 
business activities alleged to have occurred within the state, we conclude that 
the application of Section 12 to this lawsuit falls comfortably within the 
constitutional constraints on the extraterritorial application of Texas laws. 
Making this determination does not resolve whether Citizens actually “sold” a 
“security” from Texas within the meaning of the Texas Securities Act; that is a 
matter to be determined on the merits.
To obtain 
class certification, we require an “extensive analysis” of choice of law. 
Compaq, 135 S.W.3d at 672. Here, Daccach alleges only that Citizens 
violated Article 581–33(A) by selling securities in or from Texas without 
registering as a dealer. No choice of law question is presented. The trial court 
was required to determine whether the application of the Texas statute at issue 
met constitutional requirements when applied to the allegations. The trial court 
did not abuse its discretion in determining that there was a significant 
aggregation of contacts with Texas to apply Article 581–33(A) constitutionally. 
Therefore, for different reasons, we affirm the court of appeals’ holding that 
the trial court properly determined that Texas law governs.
D. Impact of Contacts with other Jurisdictions
At this point 
we return to the reason for the choice of law scrutiny—to provide the context 
for a court’s rigorous analysis of the certification requirements. See 
id. at 672-73. The court must ensure that the class representative is 
adequately representing the rights of absent class members in all aspects of the 
class litigation. The class representative’s burden in this regard stems from 
the Due Process Clause, which demands “that the named plaintiff at all times 
adequately represent the interests of the absent class members.” Shutts, 
472 U.S. at 812 (citing Hansberry v. Lee, 311 U.S. 32, 42-43, 45 (1940)). 
Thus, in this case, where there is a significant aggregation of contacts with 
Texas to apply Texas law constitutionally, the fact that other jurisdictions are 
implicated by the pleadings raises an issue of adequacy of representation. In a 
worldwide case like this, where a class representative abandons or chooses not 
to allege certain claims, including claims that may exist in other 
jurisdictions, the potential effect of claim preclusion on absent class members 
raises concerns about the prerequisites of predominance, superiority, 
typicality, and adequacy. If other jurisdictions’ laws could apply to the 
transaction, even though only a Texas violation is alleged, the class members 
who could assert those causes of action may be barred from later pursuing them 
in a different lawsuit. The laws of other interested jurisdictions may provide 
certain class members more beneficial remedies or causes of action arising from 
the same subject matter of the lawsuit. We therefore address the effect of res 
judicata or claims preclusion on later litigation of claims not alleged or 
abandoned and how the risk of preclusion may affect class 
certification.         
V. Res Judicata and Claim Abandonment
In the court 
of appeals, Citizens challenged the trial court’s class certification by arguing 
that because Daccach abandoned all claims but the Texas Securities Act claim, 
he was not an adequate representative of the class, common issues did not 
predominate over individual issues, a class action was not superior to other 
methods of adjudication, and Daccach improperly seeks to resolve a single issue 
instead of the entire controversy. The court of appeals rejected Citizens’ 
arguments, explaining that the Texas Securities Act claim was the entire 
controversy in itself and that certification was still appropriate even if other 
claims existed. 105 S.W.3d at 725. Specifically, the court of appeals affirmed 
the trial court’s certification order despite Daccach’s abandonment of numerous 
claims because “‘[c]lients who have claims not raised in this class action 
because the claims are unsuitable for class treatment can bring those claims on 
an individual basis, and res judicata will not bar those claims because 
absent class members had no opportunity to litigate those issues in this 
lawsuit.’” Id. (quoting Sullivan v. Chase Inv. Servs. of Boston, 
Inc., 79 F.R.D. 246, 265 (N.D. Cal. 1978)).
Citizens 
contends this holding amounts to a special exception to established principles 
of claim preclusion, and therefore, contradicts our holdings in Intratex Gas 
Co. v. Beeson, 22 S.W.3d 398, 405 (Tex. 2000), and Southwestern Refining 
Co. v. Bernal, 22 S.W.3d 425, 432 (Tex. 2000). Relying on Henry Schein, 
Inc. v. Stromboe, Citizens adds that res judicata precludes litigation of 
previously abandoned class claims arising out of the same transaction, and 
therefore, defeats class certification because Daccach’s willingness to abandon 
claims to the detriment of absent class members undermines the prerequisites of 
predominance, superiority, typicality, and adequacy. See 102 S.W.3d 675, 
695 (“[I]t is not clear that a class action is superior . . . if it necessitates 
that plaintiffs give up substantial rights, nor is it clear that the willingness 
. . . to forego consequential damages is typical of the other 20,000 class 
members.”). 
Daccach 
admits that for the class suit he abandoned all but the Texas Securities Act 
claim because the abandoned claims were not suitable for class treatment. 
Daccach contends, however, that because these claims were procedurally barred by 
Rule 42§s certification requirements, res judicata will not preclude subsequent 
litigation of the claims that cannot be litigated through diligence in this 
class action. See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. 
Sav., 837 S.W.2d 627, 631 (Tex. 1992). For the following reasons, we agree 
with Citizens and conclude that the trial court erred in certifying the class 
without considering the adequacy of the class representative in light of the res 
judicata effect of the class representative’s decision to abandon claims.
A. Res Judicata
Generally, 
res judicata prevents a plaintiff from abandoning claims and subsequently 
asserting them when the claims could have been litigated in the prior suit. 
Jeanes v. Henderson, 688 S.W.2d 100, 103 (Tex. 1985); see also State 
& County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001). 
For res judicata to apply, there must be: (1) a prior final judgment on the 
merits by a court of competent jurisdiction; (2) identity of parties or those in 
privity with them; and (3) a second action based on the same claims that were 
raised or could have been raised in the first action. Amstadt v. U.S. Brass 
Corp., 919 S.W.2d 644, 652 (Tex. 1996). The doctrine seeks to bring an end 
to litigation, prevent vexatious litigation, maintain stability of court 
decisions, promote judicial economy, and prevent double recovery. Barr, 
837 S.W.2d at 629; Jeanes, 688 S.W.2d at 105.
Under the 
transactional approach followed in Texas, a subsequent suit is barred if it 
arises out of the same subject matter as the prior suit, and that subject matter 
could have been litigated in the prior suit. Barr, 837 S.W.2d at 631. We 
explained in Barr that “a final judgment on an action extinguishes the 
right to bring suit on the transaction, or series of connected transactions, out 
of which the action arose.” Id. at 631 (citing Restatement (Second) of Judgments § 
24(1) (1982)). Determining the scope of the “subject matter” or “transaction” of 
the prior suit requires “an analysis of the factual matters that make up the 
gist of the complaint, without regard to the form of action.” Id. at 630. 
This should be done pragmatically, “‘giving weight to such considerations as 
whether the facts are related in time, space, origin, or motivation, whether 
they form a convenient trial unit, and whether their treatment as a trial unit 
conforms to the parties’ expectations or business understanding or usage.’” 
Id. at 631 (quoting Restatement 
(Second) of Judgments § 24(2) (1982)). “Any cause of action which arises 
out of those same facts should, if practicable, be litigated in the same 
lawsuit.” Id. at 630. 
B. Class Actions
Texas Rule of 
Civil Procedure 42 was adopted in 1941 and patterned after Federal Rule of Civil 
Procedure 23. Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000). 
Rule 42 was fully revised in 1977 to conform to the 1966 federal amendments. 
Thus, we rely on our precedents and persuasive federal decisions and authorities 
interpreting current federal class action requirements. Id. (citing 
RSR Corp. v. Hayes, 673 S.W.2d 928, 931-32 (Tex. App._Dallas 1984, writ dism’d)).
Rule 42 is a 
form of joinder, a procedural mechanism established to increase judicial economy 
and efficiency for suits with parties too numerous for conventional joinder. 
See Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1981) 
(discussing Federal Rule of Civil Procedure 23); Hansberry v. Lee, 311 
U.S. at 42-43 (“[t]he class suit was an invention of equity to enable it to 
proceed to a decree [when parties are so numerous as to make joinder] in 
conformity to usual rules of procedure . . . impracticable”); see also 
Beeson, 22 S.W.3d at 404 (citing 5 James Wm. Moore et al., Moore’s Federal 
Practice § 23.02 (3d ed. 1999)); 7A Charles Alan Wright et al., Federal Practice 
and Procedure § 1751 (3d ed. 2005). Rule 42 is intended to eliminate or 
reduce the threat of repetitive litigation, prevent inconsistent resolution of 
similar cases, and provide an effective means of redress for individuals whose 
claims are too small to make it economically viable to pursue them in 
independent actions. Sheldon, 22 S.W.3d at 452 (citing The American Law Institute, Report: 
Preliminary Study of Complex Litigation 35 (1987)). Although intended to 
be an efficient device, “there is no right to litigate a claim as a class 
action.” Sheldon, 22 S.W.3d at 452-53. A Texas court may certify a class 
action only if the plaintiff satisfies the requirements of Rule 42. Id. 
at 453. 
Moreover, 
nothing mandates that a plaintiff pursue a remedy through the procedures of Rule 
42. It is the plaintiff who chooses to resolve a claim through the class action 
mechanism. Though perhaps inefficient, every claim fit for class certification 
could be litigated outside the confines of Rule 42, just as every claim not 
suitable for class treatment must be. Thus, despite their unique procedural 
requirements, class actions provide no greater substantive rights than other 
procedural mechanisms of litigation. See Bernal, 22 S.W.3d at 432 (“[O]ur 
procedural rules do not permit the form of the proceeding to determine whether 
substantive legal principles will control.”); see also Rules Enabling 
Act, 28 U.S.C. § 2072(b) (2000) (stating that the Federal Rules of Civil 
Procedure shall not “abridge, enlarge or modify” preexisting rights). Class 
certification under Rule 42 was never meant to be an exception to res judicata, 
Beeson, 22 S.W.3d at 405, or to exist “in some sort of alternative 
universe outside our normal jurisprudence,” Bernal, 22 S.W.3d at 432. 
Basic principles of res judicata apply to class actions just as they do to any 
other form of litigation. Cooper v. Fed. Reserve Bank of Richmond, 467 
U.S. 867, 874 (1984); Bernal, 22 S.W.3d at 432; see also Matsushita 
Elec. Indus. Co. v. Epstein, 516 U.S. 367, 377-79 (1996). Accordingly, we 
hold that claims not pursued, or abandoned, in a class suit seeking damages that 
proceeds to final judgment on other claims arising from the same subject matter 
are subject to preclusion from relitigation by the principles of res judicata. 

Although it 
has not unequivocally decided the preclusive effect on subsequent actions of a 
final judgment in a class suit, the United States Supreme Court has acknowledged 
the same approach. In Hansberry and Ben-Hur, the Supreme Court 
indicated that a judgment in a class suit with an adequate representative may 
bind absent members of a class. See Hansberry v. Lee, 311 U.S. at 42 
(holding that a prior decree in a class suit did not bind a class member because 
the named plaintiff did not adequately represent the interests of the class of 
property owners); Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 
363-67 (1921) (specifically holding that a federal district court had 
jurisdiction of a class action); see also Smith v. Swormstedt, 57 
U.S. 288, 303 (1853) (“[A] court of equity permits a portion of the parties in 
interest to represent the entire body, and the decree binds all of them the same 
as if all were before the court.”); Geoffrey Hazard, Jr. et al., An 
Historical Analysis of the Binding Effect of Class Suits, 146 U. Pa. L. Rev. 1849, 1925-26 (1998). 
The Court further stated that it is permissible to hold that a judgment rendered 
in a class suit would be res judicata as to members of the class, and the 
Fourteenth Amendment does not compel a different rule for conclusiveness of the 
judgments in class suits. Hansberry, 311 U.S. at 42.
This approach 
has been challenged as unfair to absent class members who do not opt out and are 
bound by the final judgment. The argument continues that these absent members 
should be entitled to pursue individual claims in the same or other forums if 
their class claims are unsuccessful. We view the matter in a fundamentally 
different light, allowing individual choice by the plaintiffs with their 
consequent ramifications, to govern the litigation in class suits as in other 
suits. We do not dictate how litigants should structure their cases or which 
legitimate legal strategies they will pursue. We simply emphasize that legal 
consequences attach to tactical and strategic decisions in class actions as in 
other lawsuits. For instance, outside of class action suits, litigants tailor 
their actions to seek positive results from proceedings. Parties often decide to 
drop claims to achieve a desired objective: to enter a particular forum or 
venue, to avoid removal to federal court, to avoid expense for claims with 
little likelihood of success, to refrain from opening evidentiary doors harmful 
to client or case, or to focus the case on claims most likely to be successful. 
Similarly, a class may decide to pursue certain claims, abandon some, or not 
plead others. In the context of class actions this is not per se inappropriate, 
but a class representative must be aware that there are consequences associated 
with such a decision that could undermine certification. For example, a specific 
issue may involve too little commonality to allow for a class to survive the 
predominance requirements. See Bernal, 22 S.W.3d at 435. Having given 
putative class members the opportunity to choose, however, we will ordinarily 
hold class actions to the same res judicata standards as other forms of 
litigation, including enforcing the preclusion on abandoned claims which could 
have been litigated in the suit.
C. Could the Claims have been Litigated?
Daccach 
concedes that res judicata applies equally to class actions. He contends, 
however, that the claims he abandoned are procedurally barred from litigation in 
the class action by Rule 42, and therefore, res judicata cannot apply to 
preclude subsequent litigation of the claims that cannot be litigated through 
diligence in this class action suit. See Barr, 837 S.W.2d at 631 (“A 
subsequent suit will be barred if it arises out of the same subject matter of a 
previous suit and which through the exercise of diligence, could have been 
litigated in a prior suit.” (emphasis added)). To achieve certification 
despite his abandonment of class claims, Daccach argues for a rule that would 
preclude later litigation of only those causes of action that could have been 
certified in the prior class action. For reasons we explain, we decline to adopt 
Daccach’s proposed rule.
Most courts 
agree with Daccach’s concession that the basic principles of res judicata apply 
to class actions. See Cooper, 467 U.S. at 874 (and authorities cited 
therein); Hansberry, 311 U.S. at 42; Ben-Hur, 255 U.S. at 367; 
Beeson, 22 S.W.3d at 405. However, only a few cases can be read to 
support Daccach’s contention that only claims that could have been brought in a 
class action will be barred from subsequent litigation. One line of cases, 
followed by the court of appeals below and two other Texas courts of appeals, 
holds that under Federal Rule of Civil Procedure 23(c)(4), or identical Texas 
Rule of Civil Procedure 42(d), parties may bring or maintain a class action with 
respect to specific issues and will not suffer the preclusive effect of res 
judicata for those claims not actually litigated as unsuitable for class 
treatment. See, e.g., Sullivan, 79 F.R.D. at 265 (holding that 
splitting claims that are amenable to class treatment is “perfectly appropriate” 
in order to realize the savings of resources of courts and parties that Rule 23 
is designed to facilitate); Compaq Computer Corp. v. Lapray, 79 S.W.3d 
779, 793 (Tex. App.—Beaumont 2002), rev’d on other grounds, 135 
S.W.3d 657 (Tex. 2004); Microsoft Corp. v. Manning, 914 S.W.2d 602, 610 
(Tex. App.—Texarkana 1995, writ dism’d); see also 5 Herbert B. Newberg & Alba Conte, Newberg 
on Class Actions §16.22 (4th ed. 2002). The reasoning is based on Federal 
Rule of Civil Procedure 23(c)(4)(A) and Texas Rule of Civil Procedure 42(d)(1): 
“an action may be brought or maintained as a class action with respect to 
particular issues.” Some commentators characterize this approach as a 
“sophisticated transactional approach” that limits the basic transactional 
approach of res judicata and “includes trial convenience in its calculus.” 18A 
Charles Alan Wright et al., Federal 
Practice and Procedure § 4455 (2d ed. 2002) (suggesting the approach is 
supported by Section 24(2) of the Restatement (Second) of Judgments, which 
requires that a “transaction” must “be determined pragmatically, giving weight 
to such considerations as whether the facts are related in time, space, origin, 
or motivation, whether they form a convenient trial unit, and whether 
their treatment as a unit conforms to the parties’ expectations” (emphasis 
added)). 
Daccach 
suggests his proposed rule is consistent with Texas jurisprudence on res 
judicata, relying on some of our cases not involving class actions: 
Pustejovskey v. Rapid-Am. Corp., 35 S.W.3d 643, 651 (Tex. 2000); Getty 
Oil v. Ins. Co. of N. Am., 845 S.W.2d 794, 801 (Tex. 1992).[10] These cases are factually and legally 
distinguishable. In Pustejovskey, we addressed “whether a plaintiff may 
bring separate actions for separate latent occupational diseases caused by 
exposure to asbestos.” 35 S.W.3d at 644. In addressing the single action rule as 
a species of res judicata, Justice Gonzales noted that “the transactional 
approach set out in Barr does not necessarily penalize a plaintiff for 
not bringing a claim arising out of the same facts that nonetheless could not 
have been litigated in the initial action.” Id. at 651. But one of the 
reasons we adopted a separate accrual rule in that case—and, by implication, the 
reason the claim could not have been litigated in the prior action—was that the 
damage-causing injury had not yet been discovered. Id. at 652. In this 
case we are not faced with latent injuries giving rise to claims that could not 
have been litigated in a prior action due to lack of discovery. The claims in 
this case were discovered or discoverable and then abandoned by Daccach to try 
to achieve class certification. 
In Getty 
Oil, we held that a third party’s claim against a tortfeasor’s insurers was 
not precluded by prior litigation against the tortfeasor because, under the “no 
action” clause of the insurance policy and Texas Rule of Civil Procedure 38(c), 
the third party could not sue the insurer until there was a judgment against the 
tortfeasor. 845 S.W.2d at 801. Res judicata did not bar the second suit because 
the third party was contractually precluded from litigating the claim in the 
prior suit. No similar contractual agreement or rule governs in this case.
Daccach also 
relies on the following statement made by the Fifth Circuit: “If the court 
rendering judgment lacked subject-matter jurisdiction over a claim or if the 
procedural rules of the court made it impossible to raise a claim, then it is 
not precluded.” Browning v. Navarro, 887 F.2d 553, 558-59 (5th Cir. 1989) 
(citing Restatement (Second) of 
Judgments § 26(1)(c) (1982)); see also Montgomery v. Blue Cross & 
Blue Shield of Tex. Inc., 923 S.W.2d 147, 150 (Tex. App.—Austin 1996, writ 
denied) (citing Browning, 887 F.2d at 558-59). Similarly, the 
United States Supreme Court cited the Restatement (Second) of Judgments, 
which states that a second action arising from the same facts may be brought if 

 
“[t]he 
plaintiff was unable to rely on a certain theory of the case or to seek a 
certain remedy or form of relief in the first action because of the limitations 
on the subject matter jurisdiction of the courts or restrictions on their 
authority to entertain multiple theories or demands for multiple remedies or 
forms of relief in a single action . . . .”
 
 
Thomas v. 
Wash. Gas Light Co., 448 U.S. 261, 283 n.29 (1980) (quoting Restatement (Second) of Judgments § 
61.2(c) (Tent. Draft No. 5, 1978)); see also Gunnells v. Healthplan Servs., 
Inc., 348 F.3d 417, 432 (4th Cir. 2003) (rejecting contention that 
plaintiffs’ individual direct claims would be barred because a class action, “of 
course, is one of the recognized exceptions to the rule against 
claim-splitting”) (citing 18 James Wm. 
Moore et al., Moore’s Federal Practice § 131.40[3][e][iii] (3d ed. 
1999)); Restatement (Second) of 
Judgments § 26(1)(c) (1982). We are not persuaded by this 
argument.
First, the 
issue in Browning and Montgomery was whether the original 
decision-maker had subject matter jurisdiction to adjudicate the claim sought to 
be relitigated in district court. In Browning, the court barred 
litigation of a subsequent fraud claim because the bankruptcy court had subject 
matter jurisdiction to hear the claim in the prior suit by the party. 887 F.2d 
at 558-59. In Montgomery, the plaintiff was not barred from litigating 
extra-contractual claims because the administrative agency that presided over 
the prior suit did not have jurisdiction to hear those claims. 923 S.W.2d at 
150. These rulings turned on a lack of jurisdiction and do not inform our 
reasoning in this case because rule 42 of the Texas Rules of Civil Procedure 
does not affect a trial court’s subject matter jurisdiction. 
Second, we do 
not believe section 26(1)(c) of the Restatement speaks to the class action 
context. Nothing forces plaintiffs seeking damages into a class suit. They may 
decide to opt out and pursue their claims individually with separate counsel or 
decide that the size of the claim does not justify the cost of pursuing it. On 
the other hand, plaintiffs may choose to litigate their claims under Rule 42 
because it provides a more efficient and perhaps less expensive means of 
litigating certain claims. It is the class representative’s choice to seek 
certification, and the putative class members’ decision not to opt out of the 
class, that restricts their ability to rely on certain theories of recovery that 
are unsuitable for class treatment. Any restrictions that class action 
requirements place on a trial court’s ability to entertain specific theories of 
recovery in a class suit arise solely because of the choice to seek class 
certification. By this choice class members may put at risk their ability to 
litigate certain other claims not suitable for class treatment. These 
restrictions follow the individual decisions of the class members and are 
distinct from the jurisdictional restrictions that may be placed on a bankruptcy 
court or administrative agency, to which we believe section 26(1)(c) of the 
Restatements (Second) of Judgments more appropriately applies.
We also are 
unpersuaded that an exception from res judicata principles for claims abandoned 
as unsuitable for class treatment is supported by the asserted precedent from 
the United States Supreme Court. In Cooper v. Federal Reserve Bank of 
Richmond, the Supreme Court announced that general principles of res 
judicata apply in class actions, but nevertheless determined that for the Title 
VII claims brought in a class suit under rule 23 of the Federal Rules of Civil 
Procedure, certain plaintiffs were not barred from subsequently bringing 
individual discrimination claims. 467 U.S. 867 (1984). Four employees sought 
certification of a class of employees alleged to have been discriminated against 
by a bank that engaged in “policies and practices” of racial discrimination in 
violation of Title VII Section 1981. Id. at 869-70. Upon receiving 
notice, six other employees joined the class. Id. at 870-71. After a 
trial in which all named plaintiffs testified, the district court found the bank 
had engaged in a pattern and practice of racial discrimination for certain 
levels of employees, but found as to other levels of employees that the 
discrimination was not pervasive enough to order relief. Id. at 870-72. 
The six joining class members moved to intervene to allege that each had been 
individually denied promotions for discriminatory reasons. Id. at 872. 
The motions were denied, and five of the six employees then filed a separate 
action against the Bank alleging violations of Section 1981. Id. On 
interlocutory appeal of the separate action, the federal circuit court concluded 
the doctrine of res judicata precluded the plaintiffs from maintaining their 
individual race discrimination claims because they were bound by the judgment in 
the class action. See EEOC v. Fed. Reserve Bank of Richmond, 698 F. 2d 
633, 674 (4th Cir. 1983). The U.S. Supreme Court reversed.
The Court 
began by stating “[t]here is of course no dispute that under elementary 
principles of prior adjudication a judgment in a properly entertained class 
action is binding on class members in any subsequent litigation.” Cooper, 
467 U.S. at 874. The holding that basic principles of res judicata apply to 
class actions was part of a lengthy discussion of the “crucial difference 
between an individual’s claim of discrimination and a class action alleging a 
general pattern or practice of discrimination.” Id. at 876. The 
suggestion is that a class claim for a pattern or practice of discrimination 
involves factual issues distinct from those in a class member’s individual 
discrimination lawsuit. Id. at 876-77. The Court also expressly noted 
that the district court “pointedly refused to decide the individual claims” of 
the plaintiffs now seeking adjudication of the claims in a separate action. 
Id. at 881. According to the Court, therefore, the court of appeals erred 
in attaching preclusive effect to the class action because it was not 
dispositive of the individual claims alleged in the separate action. Id. 
at 880. 
We read 
Cooper not as an exception to res judicata but as an application of its 
elements—a subsequent claim might not be barred if it does not involve the same 
factual issues that were litigated in the prior class action, a situation that 
can arise in the unique context of Title VII pattern and practice litigation. 
See, e.g., Munoz v. Orr, 200 F.3d 291, 307 (5th Cir. 2000) (“We 
note that the failure of proof on the class claim does not bar all individual 
class members from bringing their own suits, provided that they do not base 
their claims solely on issues already adjudicated in this action and that they 
can show individualized proof of discrimination.”) (citing Cooper, 467 
U.S. at 880); Allison v. Citgo Petroleum Corp., 151 F.3d 402, 425 n.23 
(5th Cir. 1998) (distinguishing Cooper and stating that a subsequent 
disparate impact class action will be barred by res judicata and collateral 
estoppel because it will inevitably contain the same factual issues as were 
litigated in the pattern or practice class action); see also Marshall 
v. Kirkland, 602 F.2d 1282, 1298 (8th Cir. 1979) (pre-Cooper case 
indicating that subsequent individual discrimination claims will not be 
precluded because the issues were not actually litigated in prior class action 
and there was no notice to the b(2) class that such claims might be waived); 
Tobias Barrington Wolff, Preclusion in Class Action Litigation, 105 Colum. L. Rev. 717, 727 (2005) (arguing 
that the result in Cooper “may represent the correct rule in a Title VII 
class action, [but] it does not flow inevitably from an application of basic 
claim preclusion principles”). 
In addition, 
we find it significant that the U.S. Supreme Court emphasized the district 
court’s pointed refusal to decide the plaintiff’s individual claims. 
Cooper, 467 U.S. at 881. It would hardly seem appropriate to bar 
subsequent litigation of a dispute that a prior court refused to decide. In this 
respect, we find Texas Rule of Civil Procedure 42(d) instructive.
Rule 42(d) 
provides that “an action may be brought or maintained as a class action with 
respect to particular issues.” The rule, like its federal counterpart, “is a 
housekeeping rule that allows courts to sever the common issues for a class 
trial.” Castano v. Am. Tobacco Co., 84 F.3d 734, 746 n.21 (5th Cir. 
1996). But, while we agree that Rule 42(d) allows a trial court to consider 
certifying a class whose representative has abandoned or split claims, we 
decline to take the further step of excepting a final judgment in such a class 
action from the principles of res judicata. Class members may be precluded from 
asserting those claims in subsequent individual litigation if they arose from 
the same transaction or subject matter and could have been litigated in the 
prior suit. See Barr, 837 S.W.2d at 631. Aggregation of claims in an 
appropriate class action is a more efficient way to resolve numerous disputes at 
once. However, efficiency is defeated if the tactfully structured dispute that 
is finally resolved in class suits may be relitigated in the same or other 
forums. 
We caution, 
also, that Rule 42(d) cannot be used to manufacture compliance with the 
certification prerequisites. See Castano, 84 F.3d at 745 n.21 (“A 
district court cannot manufacture predominance through the nimble use of 
[Federal Rule of Civil Procedure 23(c)(4)].”). As explained below, the splitting 
or abandoning of certain claims may affect certification of the class in other 
ways. 
D. Effects on Certification
The different 
procedural posture of the Cooper case raises another important issue. 
There the Court was faced with an interlocutory appeal of the actual subsequent 
claims being asserted, as opposed to this case in which we are asked to 
predetermine the preclusive effect of claims that may or may not be asserted in 
later litigation. In the only other case in which the United States Supreme 
Court has addressed res judicata in the class action context, a dissenting 
justice noted that “[a] court conducting an action cannot predetermine the res 
judicata effect of the judgment; that effect can be tested only in a subsequent 
action.” Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 396 (1996) 
(Ginsburg, J., concurring in part and dissenting in part) (citing 7B Charles Alan Wright et al., Federal Practice and Procedure § 1789 
(2d ed. 1986)). We generally agree with this maxim, but hasten to address a due 
process concern that this temporal distinction may raise.
Some courts 
have applied the principles of res judicata, but refused to hold that subsequent 
claims would be precluded due to a lack of adequate notice to class members 
regarding the claims being litigated in the class action. See, e.g., 
Wright v. Collins, 766 F.2d 841,847 (4th Cir. 1989) (no preclusion because 
no notice); Aspinall v. Phillip Morris Cos., 813 N.E.2d 476, 488-89 n.19 
(Mass. 2004) (allowing member of class certified on economic damages theory to 
pursue individual claim for personal injury not suitable for certification in 
part because no “opt-out” provisions in state rules). The same reasoning has 
been the basis for court holdings that mandatory class actions for injunctive 
relief certified under Federal Rule of Civil Procedure 23(b)(2) cannot preclude 
subsequent individual claims for damages, even if based on the same events. 
See Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996); Fortner v. 
Thomas, 983 F.2d 1024, 1031 (11th Cir. 1993); Brown v. Ticor Title 
Insurance Co., 982 F.2d 386 (9th Cir. 1992); Norris v. Slothouber, 
718 F.2d 1116, 1117 (D.C. Cir. 1983); Johnson v. Gen. Motors Corp., 598 
F.2d 432, 437-38 (5th Cir. 1979) (finding that due process requires notice to 
absent class members before individual monetary damages could be barred and, 
though an absent class member could be bound by the res judicata effect of a 
Rule 23(b)(2) class action judgment as to injunctive or declaratory relief, he 
could not be barred from pursuing his individual monetary claim); Coleman v. 
Gen. Motors Acceptance Corp., 220 F.R.D. 64, 80-84 (M.D. Tenn. 2004); In 
re Jackson Lockdown/MCO Cases, 568 F.Supp. 869, 888-89 (E.D. Mich. 1983); 
Jahn ex rel. Jahn v. ORCR, Inc., 92 P.3d 984, 985 (Colo. 2004) (en banc). 
Although we are not faced here with a b(2) class, notice and due process still 
demand our attention. 
To have 
preclusive effect a prior judgment cannot be “constitutionally infirm.” 
Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 (1982). Due process 
requires “that the named plaintiff at all times adequately represent the 
interests of the absent class members,” as well as “notice plus an opportunity 
to be heard and participate in the litigation.” Shutts, 472 U.S. at 812; 
see also Tex. R. Civ. P. 
42(a)(4); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625‑26 (1997). We 
noted as much in Compaq Computer Corp. v. Lapray, where we stated that 
due process may require that class members be given notice of the class action 
and an opportunity to opt out and preserve claims that a class representative 
has abandoned. 135 S.W.3d 657, 668 (Tex. 2004); see also Gen. Motors Corp. v. 
Bloyed, 916 S.W.2d 949, 953 (Tex. 1996) (“The United States Supreme Court 
has made it clear that due process requires adequate representation of the 
interests of absentee class members that the judgment will bind.”). Although a 
certifying court cannot precisely predetermine the res judicata effect of a 
class action, it initially must protect the due process rights of absent class 
members by ensuring that the class representative adequately represents their 
interests. See Epstein v. MCA, Inc., 179 F.3d 641, 648 (9th Cir. 1999) 
(“[A]bsent class members’ due process right to adequate representation is 
protected not by collateral review, but by the certifying court initially, and 
thereafter by appeal within the state system and by direct review in the United 
States Supreme Court.”). 
Some courts 
have reconciled the tension between the trial court’s inability to predetermine 
res judicata and its burden to protect class members’ due process rights by 
requiring the trial court to assess the “risk” that uncertified claims may be 
forever barred. See Clark v. Experian Info. Solutions, Inc., No. Civ. A. 
8:001217-24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) (stating that 
offering only some claims for class certification when other, more lucrative 
claims could not be certified “defeats adequate representation since it places 
absent class members at the risk of having other claims forever barred by res 
judicata”); Zachery v. Texaco Exploration & Prod., Inc., 185 F.R.D. 
230, 243 (W.D. Tex. 1999) (assessing the risk of abandoned monetary claims that 
members of the b(2) pattern-and-practice class may face in trying to bring later 
individual claims); Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 550-51 
(D. Minn. 1999) (refusing to certify because the “possible prejudice to class 
members” resulting from claim preclusion in the future “is simply too great”); 
Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 606 
(S.D.N.Y. 1982) (refusing to certify class action for economic losses where 
plaintiffs also had personal injury claims because of significant risks that 
class members would “later [be told] that they had impermissibly split a single 
cause of action”); Millett v. Atl. Richfield Co., No. Civ. A. CV-98-555, 
2000 WL 359979, at *9 (Me. Super. Ct. Mar. 2, 2000) (explaining that asserting 
claims for injunctive relief while leaving personal injury claims unraised 
places class members at risk of subsequent claim preclusion defense); Small 
v. Lorillard Tobacco Co., Inc., 679 N.Y.S.2d 593, 601-02 (N.Y. App. Div. 
1998) (stating that paring down class claims to avoid certification problems 
creates impermissible “risk” of adverse preclusive effect). We agree with this 
approach. 
A class 
representative’s decision to abandon certain claims may be detrimental to absent 
class members for whom those claims could be more lucrative or valuable, 
assuming those class members do not opt out of the class. Abandoning such 
claims, or claims “reasonably expected” to be raised by class members, could 
undermine the adequacy of the named plaintiff’s representation of the class. 
See City of San Jose v. Super. Ct. of Santa Clara County, 525 P.2d 701, 
711-13 (Cal. 1974). But see Regions Bank v. Lee, 905 So.2d 765, 772-73 
(Ala. 2004) (rejecting adequacy challenge based on effect of res judicata 
because abandoned claims would involve a different cause of action against a 
different defendant than that involved in the class action). We hold, therefore, 
that Texas Rule of Civil Procedure 42 requires the trial court, as part of its 
rigorous analysis, to consider the risk that a judgment in the class action may 
preclude subsequent litigation of claims not alleged, abandoned, or split from 
the class action. The trial court abuses its discretion if it fails to consider 
the preclusive effect of a judgment on abandoned claims, as res judicata could 
undermine the adequacy of representation requirement. See Wolff, 105 
Colum. L. Rev at 722 (“[T]he 
preclusion inquiry would sometimes reveal significant obstacles to class 
certification . . . .”).
A trial court 
could, however, determine that the risk of preclusion is not high enough to 
refuse certification. For instance, the abandoned claims may be insignificant, 
unlikely to succeed in any proceeding, or not valuable. Some abandoned claims 
may be alleged against different defendants or may not be ripe for litigation, 
in which case res judicata would not apply. But, because we hold class actions 
seeking damages to the same res judicata standards as other forms of litigation, 
including enforcing the preclusion on abandoned claims which could have been 
litigated in the suit, it is critical that putative class members be given 
adequate notice and an opportunity to exclude themselves from the class form of 
proceeding so that they may preserve individual claims that may otherwise be 
barred from subsequent litigation. See Richard A. Nagareda, 
Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149, 216 (2003) 
(contending that the ability to opt out respects the rights of class members to 
control their claims).[11]
Under Rule 
42, notice must be given to the class, and class members given an opportunity to 
opt out, before the trial court addresses the merits of the class claims. See 
Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 360 (Tex. 2001) (Owen, 
J. dissenting); see also Am. Pipe & Const. Co. v. Utah, 414 U.S. 537, 
548 (1974) (explaining that Federal Rule of Civil Procedure 23 was amended to 
avoid “one‑way” intervention issue arising when class members were not 
identified before court made decisions going to merits). To properly protect 
absent class members, a trial court must rigorously analyze Texas Rule of Civil 
Procedure 42’s prerequisites prior to sending any necessary class notice, as 
this analysis will likely affect the class definition and requisites for the 
notice. McAllen Med. Center, Inc. v. Cortez, 66 S.W.3d 227, 232 (Tex. 
2001). Rule 42 sets out the following requirements for notice in a b(3) class 
action: 
 
For any 
class certified under Rule 42(b)(3), the court must direct to class members the 
best notice practicable under the circumstances, including individual notice to 
all members who can be identified through reasonable effort. The notice must 
concisely and clearly state in plain, easily understood language: (i) the nature 
of the action; (ii) the definition of the class certified; (iii) the class 
claims, issues, or defenses; (iv) that a class member may enter an appearance 
through counsel if the member so desires; (v) that the court will exclude from 
the class any member who requests exclusion, stating when and how members may 
elect to be excluded; and (vi) the binding effect of a class judgment on class 
members under Rule 42(c)(3).
 
 
Tex. R. Civ. P. 42(c)(2)(B). 
Ultimately, to certify a class in which the representatives have abandoned 
claims in favor of pursuing certain class claims, raising a risk of preclusion 
for absent class members, effective notice must be given to these absent members 
of an identified class regarding the preclusive effect that may attach to their 
individual claims. The unnamed members may then exercise independent judgment 
and chose to remain in the class or opt out. 
VI. Class Definition
Citizens 
challenges the court of appeals’ approval of the class definition on grounds 
that the definition fails to identify a presently ascertainable class from 
objective criteria and creates a “fail-safe” class. Citizens specifically points 
to the definition’s exclusionary language, which it contends creates a future 
contingency that grants each plaintiff a post-judgment opportunity to exclude 
himself from the class. 
            
A class is properly defined only if its members are presently ascertainable by 
reference to objective criteria. Intratex Gas Co. v. Beeson, 22 S.W.3d 
398, 403 (Tex. 2000). A class cannot be defined by subjective criteria or 
require analysis of the merits of the case. Id. A class definition that 
“rests on the paramount liability question” is not based on objective criteria 
because “the trial court has no way of ascertaining whether a given person is a 
member of the class until a determination of ultimate liability as to that 
person is made.” Id. at 404. In other words, the class is defined as 
members who succeed on the ultimate liability question. Such a “fail‑safe class” 
is also impermissible because it binds members only by a judgment favorable to 
them but not by a judgment favorable to the defendants. Id. at 405. 
       
The trial 
court’s certification order defined the class as follows:
            

The Class 
consists of all persons, who, during the Class Period (August 6, 1996 through 
the date the Class is certified): (1) purchased a CICA Policy and executed an 
assignment to a trust for the purchase of Citizens, Inc. stock, or (2) paid any 
money that, pursuant to a CICA Policy and assignment to a trust, was for the 
purchase of Citizens, Inc. stock, or (3) were entitled to any cash benefits from 
a CICA Policy that, pursuant to a CICA Policy and assignment to a trust, were 
for the purchase of Citizens, Inc. stock. Specifically excluded from the Class 
are all persons who, within the time period established by the judgment, do not 
surrender their CICA Policies and take the other actions required to obtain the 
relief awarded by the Court.
 
 
Because the 
exclusionary language of the trial court’s class definition partially defined 
the class by actions taken after the judgment, it failed to create a class that 
could be objectively ascertained before judgment. Id. at 403-04. Although 
the contours of the class did not “rest on whether the CICA policies qualify as 
securities or whether the policies were in fact sold or offered for sale from 
Texas,” and thus was not invalid as a traditional “fail-safe” class, it did 
however allow putative class members to essentially opt out of the suit after 
the judgment and thus escape the binding effect of the judgment. This class 
definition was improper.
            
The court of appeals revised the definition, substituting the word “remedy” for 
the word “Class” in the definition’s last sentence:
 
Specifically excluded from 
the remedy are all persons who, within the time period established by the 
judgment, do not surrender their CICA Policies and take the other actions 
required to obtain the relief awarded by the Court.
 
105 S.w.3d 722 
n.7 (emphasis added). We conclude that this corrects the defective class 
definition. This sentence simply states what is true is any case: a litigant, or 
in this case, a class member, may elect not to exercise a right to a remedy 
rendered in a judgment. Instead, it reiterates the obvious fact that even in the 
event of a favorable judgment, a class member may elect to keep his or her 
policy and decline the remedy. Regardless, the class member would still be bound 
by the judgment. 
VII. Attorney’s Fees
Citizens 
argues that the class’s claim for attorney fees involves individual questions of 
fact because the statute allows recovery if “the court finds that the recovery 
would be equitable in the circumstances.” Tex. Rev. Civ. Stat. art. 581-33D(7). 
The class claim—that Citizens offered or sold securities in or from Texas 
without registering with the Texas Securities Board—implicates Citizens’ overall 
business scheme. The class makes no allegation of conduct varying from buyer to 
buyer with regard to this claim. We agree with the court of appeals that because 
“the heart of the dispute turns only on whether the jury decides [whether] the 
CICA policies constitute securities and whether they were sold from Texas,” 
attorney’s fees could be awarded based on Citizens’ marketing conduct in 
general.
VIII. Conclusion
As part of a 
trial court’s rigorous analysis for certification of a Rule 42(b)(3) class, a 
trial court must assess all of Rule 42’s requirements with awareness of res 
judicata’s preclusive effect on abandoned claims. See Bernal, 22 S.W.3d 
at 435. Although we hold that res judicata principles are applicable in class 
suits and could bar claims abandoned by the class representative, we do not 
dictate how plaintiffs should structure their case or which legitimate legal 
strategies they will pursue. We simply note that legal consequences attach to 
tactical and strategic decisions in class actions as in other lawsuits. While it 
is not per se inappropriate to abandon claims or for the trial court to certify 
a specific-issue class, the requirements of class certification must still be 
met. As we have cautioned above, a class representative’s abandonment of claims 
can affect the class representative’s ability to satisfy these requirements. 
Here the trial court failed to evaluate Rule 42’s prerequisites in light of the 
claims abandoned by the class representative. Therefore, we reverse the court of 
appeal’s affirmance of the trial court’s class certification order, decertify 
the class, and remand the case to the trial court for further proceedings 
consistent with this opinion. Tex. R. 
App. P. 60.2(d).
 
 
________________________________________
J. Dale 
Wainwright
Justice
 
OPINION DELIVERED: March 
2, 2007
 
 
 
 
 
 








[1] Article 581-33A(1) of the Texas Securities Act 
provides:
 
A person who offers or sells a security in violation of 
Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an 
order under 23A or 23-2 of this Act is liable to the person buying the security 
from him, who may sue either at law or in equity for rescission or for damages 
if the buyer no longer owns the security.
 
Tex. Rev. Civ. 
Stat. art. 581-33A(1). Section 12A states 
“no person, firm, corporation or dealer shall, directly or through agents, offer 
for sale, sell or make a sale of any securities in this state without first 
being registered as in this Act provided.” Id. art. 
581-12A.

[2] The court of appeals modified the last sentence of the 
class definition by substituting the word “remedy” for the word “Class.” 105 
S.W.3d at 721-22.

[3] A negative value suit is one in which the stakes to 
each member are too slight to repay the cost of suit. Sw. Ref. Co. v. 
Bernal, 22 S.W.3d 425, 439 (Tex. 2000).

[4] In 2003, the Legislature amended sections 22.225(b) and 
(d) to give this Court jurisdiction over interlocutory appeals of orders 
certifying or refusing to certify a class. See Act of June 2, 2003, 78th 
Leg., R.S., ch. 204, § 1.02, 2003 Tex. Gen. Laws 847, 848-49. The amendments 
apply to petitions filed on or after September 1, 2003. Act of June 2, 2003, 
78th Leg., R.S., ch. 204, § 23.02(a), (d), 2003 Tex. Gen. Laws 847, 898-99. 
Because Citizens filed its petition for review in June 2003, the amendments do 
not govern our jurisdiction in this case. See Hoff v. Nueces, 153 S.W.3d 
45, 48 n.2 (Tex. 2004).

[5] On July 31, 2002, the trial court certified the class 
pursuant to Rule 42(b)(4). Effective January 1, 2004, however, the Court deleted 
as unnecessary subparagraph (b)(3) from Rule 42 and substituted in its 
place—with minor changes not pertinent here—former subparagraph (b)(4). Tex. R. Civ. P. 42 cmt.–2003. Our 
references here are to current subparagraph (b)(3), which includes former 
subparagraph (b)(4).

[6] The term “Blue Sky laws” was used by Justice McKenna 
writing for the U.S. Supreme Court in Hall v. Geiger-Jones Co., 242 
U.S. 539 (1917). He stated: “The name that is given to the law indicates the 
evil at which it is aimed, that is . . .’speculative schemes which have no more 
basis than so many feet of “blue sky”‘; or, as stated by counsel in another 
case, ‘to stop the sale of stock in fly-by-night concerns, visionary oil wells, 
distant gold mines and other like fraudulent exploitations.’“ Id. at 
550. Thus, Blue Sky laws were promulgated by states to protect investors from 
nefarious securities schemes.

[7] In a similar fashion, the commentary to section 6 of 
the Restatement provides the following:
 
b. Intended range of application of 
statute. A court will rarely find that 
a question of choice of law is explicitly covered by statute. That is to say, a 
court will rarely be directed by statute to apply the local law of one state, 
rather than the local law of another state, in the decision of a particular 
issue. On the other hand, the court will constantly be faced with the question 
whether the issue before it falls within the intended range of application of a 
particular statute. . . . If the legislature intended that the statute should be 
applied to the out-of-state facts involved, the court should so apply it unless 
constitutional considerations forbid. On the other hand, if the legislature 
intended that the statute should be applied only to acts taking place within the 
state, the statute should not be given a wider range of application. . . . 
When the statute is silent as to its range of application, the intentions of 
the legislature on the subject can sometimes be ascertained by a process of 
interpretation and construction. 
 
Restatement (Second) of 
Conflicts of Laws § 6(1) cmt. b (emphasis 
added). While we generally agree with this comment, the emphasized sentence does 
not fully explain the approach we follow in Texas to determine the 
extraterritorial affect of Texas statutes. See Marmon, 430 S.W.2d at 
182.

[8] The words “in this state” first appeared in Texas 
securities statutes in 1925 in a registration provision substantially different 
from the current version. Tex. Rev. Civ. 
Stat. arts. 579-600. In 1935, the words “in this state” were used in a 
securities registration provision more similar to the current version. Act of 
April 16, 1935, 44th Leg., R.S., ch. 100, _ 2, 1935 Tex. Gen. Laws 255, 256-59. The language of 
current Section 12 was adopted in very similar form in 1955, then re-adopted in 
its current form as section 12 of the Texas Securities Act of 1957. 
 

[9] The U.S. Supreme Court has identified two primary 
constitutional limitations on the application of a state’s substantive law to 
conduct occurring, at least in part, outside the state—the Due Process Clause 
and the Interstate Commerce Clause. Shutts, 472 U.S. at 818-22; 
Travelers Health Ass’n v. Virginia, 339 U.S. 643, 649 (1950). Citizens 
only raises a due process violation.

[10] We reject the argument predicated on Van Dyke v. 
Boswell, O’Toole, Davis & Pickering that the class could circumvent this 
conclusion by obtaining a severance of its Texas Blue Sky claim into a separate 
action. 697 S.W.2d 381, 384 (Tex. 1985).

[11] Because counsel and class representatives may have 
little or no interest in seeing absent class members opt out of a class, the 
trial court ensures that notice is effective under Texas Rule of Civil Procedure 
42(c)(2)(B). See Linda S. Mullenix, No Exit: Mandatory Class Actions 
in the New Millennium and the Blurring of Categorical Imperatives, 2003 
U. Chi. Legal F. 177, 245 (2003) 
(lamenting that opt-out claimants may be “fungible hostages” in a “class action 
game”).